THE STATE ex rel. J. E. O'BANNON v. H. B. COLE et al., Appellants.

In Banc, May 22, 1909.

1. **SCHOOLS: Vaccination: Suspending Pupils.** In the event of a threatened epidemic of smallpox a school board has power to pass a rule excluding all pupils who have not been vaccinated. That power is given the board by Sec. 9759, R. S. 1899, which says that "the government and control of the district shall be vested in a board of directors" and by Sec. 9764, R. S. 1899, which says that "the board shall have power to make all needful rules and regulations for the organization, grading and government of their school district." So long as such rules are reasonable a court of equity will not interfere with their enforcement; and a rule requiring that pupils, in the event of a present or threatened epidemic of smallpox, be suspended unless they submit to external vaccination, either by a family physician or a physician employed and paid by the board, is not unreasonable.

2. ———: **Rules: Reasonableness Determined.** Whether or not a regulation adopted by the board for the government of the school is a reasonable one, is to be judged in the first instance by the school board.

3. ———: **Vaccination: Smallpox: Epidemic.** Smallpox had been prevalent in Sedalia for eight years; the previous year it had been virulent; at the time the school board promulgated its rule requiring all pupils to be vaccinated, there were twenty-

State ex rel. v. Cole.

seven cases in the city; and there were other cases within two weeks of the trial of the case to compel the board to receive pupils who had been suspended because of refusal to submit to such rule. *Held*, that an epidemic of smallpox was both threatened and present.

4. ———: Smallpox: No Vaccination: Suspension: Compulsory Attendance. The rule of the school board, suspending all pupils who have not been vaccinated, would be a complete bar to a prosecution under the Compulsory School Attendance Law of 1905, of a parent who has not had his child vaccinated. That act must be construed with the whole body of the school law, and when so construed they can be made to so harmonize that a rule of the school board suspending pupils for failure to be vaccinated would excuse a violation of the Act of 1905.

5. STATUTORY CONSTRUCTION: Expressio Unius Est, Etc.: Limited Application. The maxim *expressio unius est exclusio alterius* is a rule of limited use and application in the construction of statutes, and is employed only for the purpose of arriving at the legislative intention in enacting the law; and if there is no legislative intent apparent on the face of the statute to make it include all subjects of which it treats and to exclude all others, the maxim is of no value in arriving at the legislative intent, which is at the basis of all statutory construction.

6. ———: ———: Sec. 9765: Exclusion of Diseased or Exposed Children. Sec. 9765, R. S. 1899, excluding from the public schools any child afflicted with a contagious or infectious disease, or liable to transmit the same after having been exposed to the same, and making a violation of its provisions a misdemeanor, in no wise conflicts with sections 9759 and 9764, vesting the control and government of the school in a board of directors and giving to the board power to make all needful rules and regulations for the government of the schools. Section 9765 does not exclude the board's power to make a rule excluding unvaccinated children in a case of a present or threatened epidemic of smallpox.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman*, Judge.

REVERSED AND REMANDED (*with directions*).

*Charles E. Yeater* for appellants.

(1) The courts refrain from interference with school regulations not oppressive or arbitrary and

which are needful for the moral and physical health of the pupils. King v. School Board, 71 Mo. 628; Deskins v. Gose, 85 Mo. 485; Dritt v. Snodgrass, 66 Mo. 286. (2) If smallpox is prevalent, as shown in this record, then even without express statutory authority, vaccination may be required as a condition precedent to the right to attend school. Duffield v. Williamsport School Dist., 162 Pa. St. 476; Field v. Robinson, 198 Pa. St. 638; State ex rel. v. Board of Education, 21 Utah 401. (3) Under the power granted by Sec. 9764, R. S. 1899, to make all needful rules for the government of the public schools, the school boards of this State can make a rule requiring the vaccination of pupils as a condition of attendance, and particularly where epidemic conditions prevail, as shown in this record, which endanger life and health in the community. In Matter of Rebenack, 62 Mo. App. 8; Hutchins v. School Com. of Durham, 137 N. C. 68. (4) The pleadings of both parties show that the children of relator were sent to the schools by him and that they were refused admission because not vaccinated, and therefore he could not be subjected to the penalities of the compulsory education act. Commonwealth v. Smith, 9 Pa. Dist. 625. (5) The rule of the school board requiring the vaccination of pupils is imperatively demanded by the highest considerations known to the law, the public health and protection to the life and safety of the citizen, and it in no wise contravenes any section of the Constitution, and the courts of the land have gone further and held statutes for compulsory vaccination to be valid and constitutional. Stull v. Reber, 215 Pa. St. 156; Viemeister v. White, 72 N. E. 97; Blue v. Beach, 155 Ind. 121; Bissell v. Davidson, 65 Conn. 183; Jacobson v. Massachusetts, 197 U. S. 11; Com. v. Pear, 183 Mass. 242.

*C. C. Lawson* and *Barnett & Barnett* for respondent.

(1)    The school board had no authority to pass the order excluding children from school who had not been vaccinated.    The school board is a body of limited jurisdiction.    It has only such powers as are conferred upon it by statute.    The provisions of the general school law, section 9764, do not include or embrace the power to exclude children from school, for the reason that they have not been vaccinated, because the right to exclude children on account of contagious diseases or liability to transmit the same is expressly provided for in the subsequent section, sec. 9765.    This section is the only provision in our statutes authorizing the exclusion of a child from school on account of contagious or infectious disease or by reason of exposure thereto or liability to transmit the same and the mention of this cause is the exclusion of all other causes not mentioned.    There could not be a stronger illustration of the maxim *"expressio unius est exclusio alterius."*    The Constitution of Missouri provides for the establishment and maintenance of free schools for the gratuitous instruction of all persons in this State between the ages of six and twenty years, and the Legislature has provided for the carrying out of the powers of said Constitution which provided free public schools for children of that age.    Therefore, a rule has been established that all children of said age are entitled to attend the public schools and the Legislature has attempted to prescribe certain exceptions to the rule and the only exception prescribed so far as exclusion on account of diseases is concerned is in section 9765 and a mention of that exception excludes all other grounds of exclusion, other than those mentioned.    The exception cannot be enlarged by construction, but is narrowed to the exception named in the statute, and the failure to be vaccinated is not one

of the exceptions named in the statute. State ex rel. v. Fisher, 119 Mo. 151. (2) The Legislature has enacted a law making it compulsory for parents to send their children to school. Laws 1905, p. 146. A punishment has been prescribed by act for failure to send children to school, and in view of this compulsory attendance the board can not exclude a child from school on account of failure to be vaccinated for the reason that their failure to send the child makes the parent a law-breaker. Therefore, the school board can not exclude the children from school and thus make the parent a law-breaker for not sending them to school, in obedience to the compulsory education law. Matthews v. Board of Education, 86 N. W. 1036. (3) The general police powers of a city authorizing the passing of ordinances and the making of regulations for the promotion of health or the suppression of disease do not include the passage of an ordinance making vaccination a condition precedent to the right of education. People v. Board of Education, 234 Ill. 422; Matthews v. Board of Education, 86 N. W. 1038. (4) Even if the case of In the Matter of Rebenack, 62 Mo. App. 8, were to be followed by this court yet that case is not in point here as that case was decided under the peculiar provisions of the charter under which the school district of the city of St. Louis was created. (5) We think it will be found that all the cases cited by appellant supporting the authority of school boards to exclude children on the ground that they had not been vaccinated are cases in States where the statute itself expressly provides that children must be vaccinated before they can attend school or where the statute authorizes the school board to exclude children on that ground, or, as in some cases, where the charter of the city, which is a legislative act, authorizes the school board within such city to exclude such children, who have not been vaccinated. Appellant cites two or three Pennsylvania cases, but

it will be found that those cases are bottomed upon the statutes of the State of Pennsylvania. The Legislature of Pennsylvania by an Act of Assembly passed June 18, 1895, provided "that persons in charge of schools shall refuse admission to children except upon certificate of a physician that they have been successfully vaccinated or had previously had smallpox." The case of Viemeister v. White, 72 N. E. 86, is a New York case and the laws of New York (Laws 1893) provide "that children must be vaccinated before they are admitted into the schools."

GRAVES, J.—Relator is a resident taxpayer of the city of Sedalia, and of the Sedalia school district. He is also the father of two children, aged between eight and fourteen years, which were excluded from the public schools of said district by reason of the action of the defendants who constitute the board of directors of the defendant school district of the city of Sedalia.

The board of directors of said school district on December 4, 1908, made the following order:

"Whereas it has come to the knowledge of the board of education that smallpox exists within the school district; that they deem it necessary that all children attending school, who have not been vaccinated, must be vaccinated within thirty days."

On January 8, 1909, said board made the following additional order:

"On motion the following resolution was unanimously adopted:

"The board will not accept a certificate of vaccination unless the physician does state that the child has been vaccinated with vaccine virus, and all children who have had smallpox must bring a certificate from the physician in attendance to that effect; and where such certificate cannot be procured, then the parent or guardian must make affidavit that such child has

had the smallpox.    Any child who has been vacci-
nated as many as two times without taking, a certifi-
cate from the physician will be accepted.

"On motion Dr. Cole was authorized to purchase
vaccine points to vaccinate poor children, the bill to
be paid by the board."

And on January 12, 1909, the records of said
school district show the following additional order:

"Called meeting of the board of education held
at the office of J. T. Montgomery.    Meeting called to
order by the president.    Present: William H. Powell,
W. M. Johns, Dr. Cole, Charles Hoffman, J. T. Mont-
gomery.

"The president stated the object of the meeting
was for the purpose of taking further action on the
question of vaccination; that he had been informed
by the superintendent that certain doctors had been
vaccinating school children by giving powders intern-
ally and giving them certificate that they had been
vaccinated internally with vaccine virus.

"Dr. Barnum was present and requested to be
heard on the subject, which was granted, and Dr. Bar-
num stated that he had been vaccinating school chil-
dren by giving the vaccine virus internally and that
such treatment would render the patient immune from
smallpox.

"On motion the following resolution was passed,
that no certificate of vaccination shall be received un-
less the same states that the person was vaccinated
externally with vaccine virus.

"There being no further business, the board ad-
journed."

Relator's two children were excluded from the
schools of the district in January, 1909, under the or-
ders aforesaid, and because they had not been vaccina-
ted as by said orders required.    Upon their exclusion
the relator instituted this action by mandamus in the
circuit court of Pettis county to compel the defendants

to reinstate his children as pupils in said schools, and to cancel and annul the alleged illegal orders aforesaid. After pleading certain facts, the petition of relator concludes thus:

"Wherefore, the premises considered, the plaintiff, at the relation of J. E. O'Bannon, prays the court to issue its writ of mandamus, directed to the said defendants and that they be directed and compelled to admit the relator's said children to the said school in the said city of Sedalia in the appropriate rooms and that they be directed and compelled by the order and writ of this court to cancel, annul and set aside said illegal order and have such other and further allegations as to the court may seem proper in the premises."

Defendants made due return to the alternative writ issued upon relator's petition, and by reply filed the issues were duly made up and the case proceeded to trial.

There is little dispute as to the facts. From the evidence it appears that smallpox has been prevalent in the city of Sedalia, which city is within the school district, for at least eight years; that at the time the first order was made, there were twenty-seven cases of smallpox in said city; that a year or so previous smallpox had been so prevalent that the State Board of Health threatened to take charge of the city; that there had been five hundred to six hundred cases within the past eight years; that in the M., K. & T. Hospital, within said city, there was a pest ward, and there were smallpox patients treated there every year; that there were cases of smallpox in the city to within two weeks of the trial of the case, *nisi*.

Upon the trial the alternative writ was made peremptory and by the judgment and decree of the court the order of December 4, 1908, *supra,* and all subsequent orders of the school board, were declared null and void, and defendants directed to set them aside,

and to forthwith admit relator's children to said school. Judgment also went against defendants for costs.

From such judgment, defendants, after unsuccessful motions for new trial and in arrest of judgment, have duly appealed to this court.

I. Appellants contend that the board of directors had the inherent right to promulgate and enforce the orders and rules in question, and they further contend that they have that power under the general statutory provisions. By section 9759, Revised Statutes 1899, it is provided:

"The government and control of the district shall be vested in a board of directors composed of three members, who shall be citizens of the United States, resident taxpayers and qualified voters of the district, and who shall have paid a State and county tax within one year next preceding his or their election."

And by section 9764, Revised Statutes 1899, it is provided: "The board shall have power to make all needful rules and regulations for the organization, grading and government in their school district—said rules to take effect when a copy of the same, duly signed by order of the board, is deposited with the district clerk, whose duty it shall be to transmit, forthwith, a copy of the same to the teachers employed in the schools; said rules may be amended or repealed in like manner."

In this contention we agree with the appellants. The precise question has never been before this court, but has been before the St. Louis Court of Appeals in the case of the matter of the application of Rebenack for a writ of mandamus against the board of education of the city of St. Louis (In the Matter of Rebenack, 62 Mo. App. 8).

This court, however, has always recognized the right of the school boards of the State to make reason-

able rules for the regulation of their respective schools. [Deskins v. Gose, 85 Mo. 485; King v. School Board of Jefferson City, 71 Mo. 628; Dritt v. Snodgrass, 66 Mo. 286.]

In the Rebenack case, *supra*, Judge ROMBAUER, of the St. Louis Court of Appeals, had to deal with the exact question before us. In that case the rules of the school board excluded children from attending the public school without satisfactory evidence that such children had been vaccinated. Rebenack's children were excluded under this rule and by mandamus he sought to reinstate them. The charter provisions with reference to the board of education gave such board power ''to make all rules, ordinances and statutes for the government and management of such schools and property, so that the same shall not be inconsistent with the laws of the land.'' One of the laws of the land then in force and applicable to St. Louis was section 9765, relied upon by respondent in this case, and discussed later in this opinion. The rule was held to be a reasonable one, and it was further held to be within the power granted by the charter as above quoted. The grant in our statute, section 9764, Revised Statutes 1899, is fully as comprehensive and broad as is this charter grant of powers.

The Rebenack case has been cited with approval in the following cases: Blue v. Beach, 155 Ind. l. c. 138; Com. v. Pear, 183 Mass. l. c. 246; State ex rel. Freeman v. Zimmerman, 86 Minn. l. c. 358; Hutchins v. Durham, 137 N. C. l. c. 70; State ex rel. Cox v. Board of Education, 21 Utah l. c. 415.

By section 9759, *supra*, the government and control of the district is vested in the board of directors. We have here a broad and general grant, as do we also in section 9764, *supra*. We have no doubt that in the event of a threatened epidemic of smallpox such boards can pass a rule excluding all pupils who have not been vaccinated. That a person who has never been

vaccinated is subject to the contagion of smallpox is general knowledge. That vaccination has reduced the ravages of this disease is also general knowledge. That the appearance of unvaccinated pupils in a public school at a time of a smallpox epidemic, would tend to break up and disorganize a public school, is unquestioned. That the school board has the power to absolutely suspend the school during epidemics of contagious or infectious diseases, we think can hardly be questioned. No court would compel the opening of a school under such circumstances. The power here exercised was a very similar power, and if these rules are reasonable, we see no reason why their enforcement should be prohibited.

In the Rebenack case, *supra,* it is said: "In the nature of things, it must rest with the boards of education to determine what regulations are needful for a safe and proper management of the schools, and for the physical and moral health of the pupils entrusted to their care. If such regulations are not oppressive or arbitrary, the courts cannot, or should not, interfere."

In Duffield v. School District, 162 Pa. St. 1. c. 483, the Supreme Court of Pennsylvania, in discussing the question, says: "It would not be doubted that the directors would have the right to close the schools temporarily during the prevalence of any serious disease of an infectious or contagious character. This would be a refusal of admission to all the children of the district. They might limit the exclusions to children from infected neighborhoods, or families in which one or more of the members was suffering from the disease. For the same reason they may exclude such children as decline to comply with requirements looking to prevention of the spread of contagion, provided these requirements are not positively unreasonable in their character. Is the regulation now under consideration a reasonable one? That is to be judged

of in the first instance by the city authorities and the school board. It is only in the case of an abuse of discretionary powers that the court will undertake to supervise official discretion," and further at page 484, the court says: "It is conceded that the board might rightfully exclude the plaintiff's son if he was actually sick with, or was just recovering from, the smallpox. Though he might not be affected by it, yet if another member of the same family was, the right to exclude him, notwithstanding he might be in perfect health, would be conceded. How far shall this right to exclude one for the good of many be carried? That is a question addressed to the official discretion of the proper officers; and when that discretion is honestly and impartially exercised the courts will not interfere."

In the Zimmerman case, the Supreme Court of Minnesota thus expresses the law: "It is very true that the statutes of our State provide that admission to the public schools shall be free to all persons of a defined age and residence, and that every parent having control of any child of school age is expressly required to send such child to school, and that all teachers are required to receive them, and that, if any child of school age is denied admission or suspended or expelled without sufficient cause, the board or other officers may be fined. But all these statutory provisions must be construed in connection with, and subordinate to, the statutes on the subject of the preservation of the public health and the prevention of the spread of contagious diseases. The welfare of the many is superior to that of the few, and, as the regulations compelling vaccination are intended and enforced solely for the public good, the rights conferred thereby are primary and superior to the rights of any pupil to attend the public schools."

The North Carolina court, in Hutchins v. Durham, *supra,* thus speaks: "The plaintiff relies upon Potts v. Breen, 167 Ill. 67, 39 L. R. A. 152, 59 Am. St. Rep. 262, that in the absence of express legislative power a resolution requiring vaccination as a prerequisite to attending schools is unreasonable, when smallpox does not exist in the community and there is no reasonable ground to apprehend its appearance. With the present rapid means of inter-communication, smallpox may make its appearance in any community at any moment without any notice given beforehand, and incalculable havoc be made, especially among the school children, which cannot be remedied by a subsequent order excluding the non-vaccinated. 'An ounce of prevention is worth a pound of cure.' Besides that case is not in point here, where smallpox had been epidemic and was still threatening. The language of the resolution making it 'permanent' will not prevent its repeal, if upon the subsidence of the danger the school board of that day shall deem it proper to repeal. If the action of the board is not satisfactory to the public, a new board will be elected who will rescind the resolution."

The Illinois case, thus criticized in the above, is of the line of Illinois cases relied upon by the respondent here. It will be noticed, however, that the Illinois rule does not go to the extent of holding that a board of education in case of a threatened smallpox epidemic could not exclude pupils who had not been vaccinated. In the very recent case of People v. Board of Education, 234 Ill. l. c. 425, the doctrine of the Potts case is thus stated: "In the case of Potts v. Breen, 167 Ill. 67, it was held that the exclusion of a child from a public school because of a refusal to be vaccinated can only be justified where such course is necessary, or reasonably appears to be necessary, in case of an existing or threatened epidemic of smallpox and to prevent the spread of the disease. In the

case of Lawbaugh v. Board of Education, 177 Ill. 572, the court adhered to those principles and declined to further discuss them, although earnestly urged to reconsider the former decision.''

Likewise says the Utah Court, State ex rel. Cox v. Board of Education, 21 Utah l. c. 414 and 415.

The courts may be somewhat divided upon the question as to whether or not vaccination under all conditions and at all times be made a condition precedent to a child attending a public school, but the courts are practically a unit in holding that in the event of a present or threatened epidemic such rules are reasonable and should be upheld by the courts. And such has been the rule in States where there is no express statutory authority requiring vaccination. *Vide* some of the cases *supra.*

Many States have passed laws requiring vaccination of pupils before entering schools and these have been generally upheld and that too in the face of statutory and constitutional provisions making such schools open to all pupils within the required ages. [Bissell v. Davison, 65 Conn. 183; Viemeister v. White, Pres., etc. (N. Y.), 72 N. E. 97; Com. v. Pear, 183 Mass. 242; Field v. Robinson, 198 Pa. St. 638; Jacobson v. Massachusetts, 197 U. S. 11, and cases cited.]

To the opinion in the Jacobson case, is appended a valuable note showing the effectiveness of vaccination, and the origin of compulsory vaccination.

We shall not go further upon this branch of the case. Nor shall we go beyond the case in question. For years there had been smallpox in Sedalia. Within two weeks of the trial, *nisi,* there were yet cases there. At the promulgation of the rules in question there were a number of cases, so there was not only a threatened epidemic of the disease, but an epidemic itself. We are of opinion that school boards in Missouri in the event of a smallpox epidemic, or a threatened

smallpox epidemic, have the right to enforce such rules as were enforced in this case, unless they are precluded therefrom by certain other statutes relied upon by respondent, and these statutes we discuss in the succeeding paragraphs.

II.   One contention of respondent is that by reason of the Compulsory School Act of 1905, Laws of 1905, p. 146, the rules in question would force him to violate that law, and that under that law the rules enforced by the school board are void.   This act in no way affects these rules.   In the first place there can be no prosecution of a parent for failing to send his child to school under this Act of 1905 until after an officer of the school district has notified him to send such child and then if he fails a prosecution can be had.   Respondent is in no danger of violating this law. The act makes it a misdemeanor to violate its provisions and we have yet to hear of a criminal case wherein a defendant was convicted of wilfully violating a law, when in fact he has manifested the disposition that this respondent has to comply with the strict letter of the law.   But laying aside all levity, the act of the school board, whose officer must initiate the prosecution by giving notice, would be an absolute defense.   Beyond all this, the Act of 1905 must be construed with the whole body of the school law and when so construed it can be made to harmonize therewith to the end that there would be no violation of the law.   The same question is discussed in a way in the Minnesota case, *supra,* wherein the court uses the language herein above quoted.   It will be observed that the court says that all the statutes must be construed together.

The exact question before us came up in Pennsylvania in the case of Com. v. Smith, 9 Pa. Dist. Rep. 625.   Smith refused to produce a certificate that his son had been vaccinated as required by the order of

the board of education. Under the order the teacher refused to admit the child upon application of Smith. The attendance officer (the same as provided for in our Act of 1905), notified Smith to send his child to school, and at the expiration of the time designated in the notice proceeded to prosecute Smith, and upon being convicted in the justice's court Smith appealed to the district court, in which court, FANNING, P. J., in an elaborate opinion, in which is discussed the compulsory school law of that State (much like our own), reversed the judgment of the lower court.

So that we are of opinion that there is no real conflict between rules of the character involved in the case before us and the Act of 1905.

This contention is therefore ruled against the respondent.

III. Respondent chiefly relies upon section 9765, Revised Statutes 1899, as the battering ram by which the rules of the school board, *supra,* are to be demolished. This statute it is said, when interpreted under the familiar maxim of "*expressio unius est exclusio alterius,*" is an unsurmountable barrier to the exercise of the power exercised by the Sedalia School Board.

This statute reads: "It shall be unlawful for any child to attend any of the public schools of this State while afflicted with any contagious or infectious disease, or while liable to transmit such disease after having been exposed to the same. For the purpose of determining the diseased condition, or the liability of transmitting such disease, the teacher or board of directors shall have power to require any child to be examined by a physician or physicians, and to exclude such child from school so long as there is any liability of such disease being transmitted by the same. A refusal on the part of the parent or guardian to have an examination made by a physician or physicians,

at the request of the teacher or board of directors, will authorize the teacher or board of directors to exclude such child from school; and any parent or guardian who shall persist in sending a child to school, after having been examined as provided by this section, and found to be afflicted with any contagious or infectious disease, or liable to transmit the same, or after having refused to have such child examined as herein provided, shall be deemed guilty of a misdemeanor, and upon conviction, shall be punished by fine of not less than five nor more than one hundred dollars."

The maxim above quoted is purely one of construction. It is one of limited use and application. And when applied in the construction of statutes it must be with the purpose solely of gathering the legislative intent. That is to say, whether or not the legislative body intended by mentioning one thing to exclude all others.

Of this maxim, Black in his concise and estimable work on Interpretation of Laws, p. 146, says: "The maxim '*expressio unius est exclusio alterius*' is of very important, though limited, application in the interpretation of statutes. It is based upon the rules of logic and the natural workings of the human mind. But it is not to be taken as establishing a Procrustean standard to which all statutory language must be made to conform. On the contrary, it is useful only as a guide in determining the probable intention of the Legislature, and if it should be clearly apparent, in any particular case, that the Legislature did not in fact intend that its express mention of one thing should operate as an exclusion of all others, then the maxim must give way."

And Endlich, equally strong and expressive, in his work on Interpretation of Statutes, sec. 398, says: "And, on the other hand, if there is such a rule, it is confessedly liable to so many restrictions and ex-

ceptions in its application as to be practically swept away. Indeed, the extreme caution necessary in its application is emphasized wherever it is recognized by writers. Even as to penal statutes, it is said to be too general and subject to too many exceptions to govern the construction.''

In Broom's Legal Maxims (8 Ed.), page 653, that noted writer uses this cautionary language: ''It will, however, be proper to observe, before proceeding to give instances in illustration of the maxim *expressio unius est exclusio alterius,* that a great caution is requisite in dealing with it, for, as Lord CAMPBELL, C., observed in Saunders v. Evans, 8 H. L. Cas. 729, it is not of universal application, but depends upon the intention of the party as discoverable upon the face of the instrument or of the transaction.''

Other text-writers and cases are along the same line. The maxim as applied to statutory construction is of very limited use, and when invoked at all is for the mere purpose of discovering the legislative intent in enacting the law. Legislative intent is at the basis of all statutory construction. So that the real question before us in the construction of section 9765, *supra,* is whether or not there was a legislative intent to limit in this particular the broad powers granted to school boards by sections 9759 and 9764 to govern and control their respective schools and to make all needful rules therefor. We think not. These statutes being *pari materia* should be construed so as to make them each and all stand, if such construction fairly falls within the legislative intent, as such intent is or may be gathered from them. Let us analyze said section 9765. This analysis shows: (1) it prohibits a child afflicted with a contagious or infectious disease, or one exposed to such a disease and liable to transmit the same, from attending a public school; (2) for determining either its diseased or exposed condition either the teacher or school board may require the

child to be examined by a physician; (3) such child may be excluded so long as there is danger of transmitting such disease; (4) a refusal upon the part of the parent or guardian to permit such child to be examined authorizes the exclusion of such child from the school, and (5) if the parent or guardian shall persist in sending such child to the school, such act is made a misdemeanor and a punishment is affixed.

This analysis of the section shows that it is dealing wholly with a case where a child is actually diseased, or has been exposed to a disease of the character named. The statute does not undertake to abrogate the general power to control the school given to the board of directors by section 9759, *supra,* nor does it undertake to deal with the subject of needful rules as authorized by section 9764, *supra.* One main purpose of this section 9765 is to provide a punishment for that class of either careless or persistent parents, who are willing to inflict upon others the diseases and troubles of their own children. The first part of the statute, as said, deals with a concrete case of a diseased or exposed child, but by no maxim, or other rule of construction, can we see how it can be said that in the enactment of this statute there was a legislative intent to preclude a school board from enacting reasonable rules to prevent the appearance of contagious or infectious diseases in the school room. The rules in question in this case were enacted for the purpose of preventing the appearance of disease in the school. This the school board can do, so long as their rules are reasonable, under the general grant of power. As said the statute relied upon by respondent deals with a case where actual disease has appeared, or with a case where it is known that there has been exposure and thereby reasonably expected appearance of the disease.

These statutes are not conflicting. Nor is there apparent in the latter statute an intent upon the part

of the Legislature to exclude the powers of a school board to pass rules intended to prevent the first appearance of smallpox in the school. In our judgment there was no attempt to curtail the powers of a school board to pass needful rules for their schools.

As stated in a former part of this opinion, we shall not go beyond the facts of the case, and in confining ourselves to the facts of the particular case, may not go quite so far as seems to have been done in the Rebenack case, for it does not therein appear that there was in fact either an epidemic of smallpox or a threatened epidemic of smallpox.

We are of the opinion that the school boards of Missouri have the right to enact and enforce rules of the character here in question at all times whenever there is either a smallpox epidemic in the district, or whenever there is a threatened smallpox epidemic.

The very purpose of such regulations might be thwarted were we to actually await the epidemic itself.

From these views it follows that this cause should be reversed and remanded with directions to the circuit court to set aside its judgment making the alternative writ of mandamus peremptory, and to enter a judgment quashing the alternative writ and rule, and for costs against the relator in favor of the defendants.

All concur, except *Valliant, C. J.,* absent, and *Burgess* and *Fox, JJ.,* who dissent.