THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HAGBARD EKEROLD, Appellant.

Appeal — judgment of New York City Magistrate's Court affirmed by Court of General Sessions and Appellate Division — Appellate Division may allow appeal to Court of Appeals — public schools — vaccination — parent's refusal to have child vaccinated — action for penalty against such parent for failure to send child to school.

1. An appeal from the decision of a City Magistrate's Court to the Court of General Sessions, and thence from a judgment of affirmance to the Appellate Division, is a matter of right. (L. 1910, ch. 659, §§ 72, 94.) In the absence of permission to appeal the judgment of the Appellate Division is final, but under the Constitution (Art. 6, § 9) the Appellate Division has power to allow a further appeal from its judgment to this court.

2. The law requiring vaccination of children in the public schools is a proper one. When a father sends his child to school unvaccinated, and the school authorities refuse to allow said unvaccinated child to attend school (Public Health Law, § 310; Cons. Laws, ch. 45), and the father refuses to permit vaccination and thereafter does not cause said child to attend on instruction as provided in section 624 of the Education Law (Cons. Laws, ch. 16; L. 1910, ch. 140), he is subject to the penalty provided in section 625 of that act. (*Matter of Viemeister*, 179 N. Y. 235, followed.)

*People* v. *Ekerold*, 160 App. Div. 930, affirmed.

(Argued April 13, 1914; decided June 2, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 23, 1914, affirming a judgment of the Court of General Sessions of the Peace in the county of New York which affirmed a judgment rendered at a Magistrate's Court in the city of New York convicting the defendant of violating the provisions of the Education Law in not sending his son to school.

The following question was certified: "When a father, who does not believe in vaccination, sends his child to school unvaccinated, but the school authorities refused to allow said unvaccinated child to attend school, and thereafter the father does not cause said child to attend on instructions as provided in section 624 of chapter 140 of the Laws of 1910, is such father subject to the penalty provided in section 625 of said act?"

The facts, so far as material, are stated in the opinion.

*Harry Weinberger* for appellant. There was no violation of the Compulsory Education Law. (*People* v. *Briggs,* 193 N. Y. 459; *Van Dyck* v. *McQuade,* 86 N. Y. 56; *V. C. Cheese Co.* v. *Murtaugh,* 50 N. Y. 314; *People* v. *Rosenberg,* 138 N. Y. 415; *People* v. *Marx,* 99 N. Y. 387; *Matter of Viemeister,* 179 N. Y. 239; *Dulfield* v. *School District,* 162 Penn. St. 476; *People* v. *Nelson,* 153 N. Y. 94; *Blue* v. *Beach,* 155 Ind. 142; *O'Bannon* v. *Cole,* 220 Mo. 697.)

*Charles S. Whitman, District Attorney* (*Charles McIntyre* of counsel), for respondent. The Court of Appeals has no jurisdiction to entertain this appeal. (*People* v. *Johnston,* 187 N. Y. 319; *People* v. *Cullen,* 151 N. Y. 54; *People* v. *Malone,* 160 N. Y. 568.) The defendant was guilty of a misdemeanor. (*Matter of Viemeister,* 179 N. Y. 235; *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Cromwell* v. *Benjamin,* 41 Barb. 558; *People* v. *Brooks,* 35 Barb. 85.)

HISCOCK, J. The defendant was duly convicted before a magistrate in the city of New York of violating the duty imposed on him as a parent by section 624 of the Education Law (Cons. Laws, ch. 16; Laws of 1910, chapter 140) to cause his son "to attend upon instruction," in accordance with the provisions of section 621 of that chapter, and which violation is made a misdemeanor. His child was between the ages of seven and fourteen years, and, therefore, came within those provisions of said latter section which read as follows:

"1. Every child within the compulsory school ages, in proper physical and mental condition to attend school, residing in a city or school district having a population of five thousand or more and employing a superintendent of schools, shall regularly attend upon instruction as follows:

"(a) Each child between seven and fourteen years of age shall attend the entire time during which the school attended is in session, which period shall not be less than one hundred and sixty days of actual school."

The important facts involved in the controversy were precipitated by the subject of vaccination in the public schools. The boy had been in attendance at a public school and had not been vaccinated. Acting under and in accordance with the provisions of section 310 of the Public Health Law (Cons. Laws, ch. 45), providing "No child or person not vaccinated shall be admitted or received into any of the public schools of the state, and the trustees or other officers having the charge, management or control of such schools shall cause this provision of law to be enforced," the board of education of the city of New York had adopted by-laws in substance providing that no pupil should be allowed to attend the public schools unless he had been vaccinated. Because of a refusal to comply with this statute and these by-laws the defendant's son was excluded from the school which he had been attending, and defendant urges this exclusion as a valid reason

why he should not comply with the provisions of the Education Law requiring the attendance of his son, and, therefore, as a defense to this proceeding to punish him for failure to cause such attendance on the part of said son.

The first proposition urged upon our consideration is that no appeal will lie from the judgment of the Appellate Division, but we think this cannot be sustained.

Section 94 of the act in relation to the Inferior Courts of criminal jurisdiction of the city of New York (Laws of 1910, chapter 659) in substance enacts that all provisions applicable to appeals to the Court of General Sessions of the Peace in the county of New York from any judgment of a city magistrate or of any court held by a city magistrate in force when said act took effect shall apply to and regulate all appeals, and the right of appeal in all cases hitherto existing was preserved.

Section 72 of said act provides that the magistrates of said court are magistrates, and said Magistrates' Courts are Police Courts, within the meaning of the provisions of the Code of Criminal Procedure and the Penal Law.

Under these provisions an appeal from the decision of a City Magistrate's Court to the Court of General Sessions and thence from a judgment of affirmance to the Appellate Division was matter of right. (Code Criminal Procedure, sections 749, 51 and section 770.) In the absence of permission to appeal the judgment of the Appellate Division was final. (Code of Criminal Procedure, sec. 771; *People* v. *Johnston*, 187 N. Y. 319.)

While the act already referred to (Laws of 1910, chap. 659, sec. 40) secured without permission the right to appeal to the Court of Appeals from a judgment of the Appellate Division in the case of a prosecution originating in the Court of Special Sessions in New York, thereby changing the law, no such amendment seems to have been made in the case of City Magistrates' Courts.

Under the Constitution, however, I think that the

Appellate Division had permission to allow a further appeal from its judgment to this court.

The Constitution (Art. 6, sec. 9), after enumerating cases in which appeals may be taken to the Court of Appeals as matter of right, further provides: "The Appellate Division in any department may, however, allow an appeal upon any question of law which, in its opinion, ought to be reviewed by the Court of Appeals."

No statutory provision has been adopted under this enactment expressly allowing appeals by permission to the Court of Appeals in a criminal proceeding originating like the present one in an inferior court. The legislature, however, interpreting and carrying out the intent of this provision as applicable to civil cases, has provided that appeals in such cases originating in inferior courts not otherwise permitted may be taken to the Court of Appeals by permission of the Appellate Division. (Code Civ. Pro. § 191.) The constitutional provision being broad and complete enough without supplementary statutory provision to secure the right of appeal by permission, I see no reason why we should not give to it the force in criminal cases which has been adopted in civil ones and thereby secure harmony of practice.

This course has been pursued in respect of the unanimous affirmance clause of the same section of the Constitution. The legislature re-enacted this provision as applicable to civil cases. (Code Civ. Pro. § 191.) It never did this in regard to criminal proceedings and in the absence of such statutory enactment it was for some time doubted whether such constitutional provision applied to criminal proceedings. That doubt now has been removed and it has been abundantly held that it is so applicable. The reasoning which was applied by Judge GRAY to that question seems to be entirely pertinent to the present one. He wrote, "The constitutional provision as to the conclusiveness of a judgment upon all questions of fact, when unanimously affirmed by the

Appellate Division, is unqualified in its language and there is no reason for denying its effect in criminal cases." (*People* v. *Maggiore*, 189 N. Y. 514, 515.)

Without deciding the question, it was assumed in *People* v. *Johnston* (*supra*) that the constitutional provision under consideration was applicable to criminal cases.

There was no necessity for formulating and certifying a specific question. (*Kurz* v. *Doerr*, 180 N. Y. 88, 92.)

Thus we are brought to a consideration of the appeal on the merits.

It is obvious that a parent should not be allowed to escape his duty to send his children to school as provided by law on any excuse which is not an ample justification for such course. Our public school system has been developed ·with great pains and solicitude and its maintenance and support have been recognized as so important for the welfare of the state that they have been provided for and safeguarded in the Constitution itself. As a part of this system a statute has been passed requiring attendance at school of children within certain limits. If indifferent or selfish parents for ulterior purposes, such as the desire to place young children at labor instead of school, or from capricious or recalcitrant motives, may be allowed to manufacture easy excuses for not sending their children to school, a ready method will have been developed for evading the statute compelling such attendance, and if the statute which requires parents to see to it that their children attend and take advantage of this school system may be lightly and easily evaded, the purposes of the state in providing and insisting on education will be frustrated and impaired. Failure to comply with the statute ought not to be excused except for some good reason.

It is perfectly evident that in a great city like New York with its complex and varying conditions, regulations must be adopted for the purposes of preserving discipline,

order and health in the public schools. Some of these regulations would be so plain and essential that no reasonable person would think of disputing their validity or of making unwillingness to comply therewith a basis for not sending his children to school. The question which within certain limits is presented here is whether the statute and the by-laws of the board of education in that city adopted under and in accordance with the statute requiring vaccination as a condition of attending the public schools, are under ordinary conditions so unusual or oppressive that a parent should be allowed to make his unwillingness to comply therewith a basis for not sending his children to school, for that is what the present position of the defendant amounts to. I do not think that they are of such a character.

It is unnecessary to engage in any discussion of the police powers of the state in respect of this subject or to argue that the statute requiring vaccination as a condition of attending public schools is well within such police power. This subject was carefully and elaborately construed by this court in *Matter of Viemeister* (179 N. Y. 235), and it was there held that the legislature might pass such a law, and amongst other things it was written in substance that while it could not be exactly and absolutely demonstrated that vaccination prevented smallpox and while some authorities disputed this proposition, the prevalent belief was that it did have this effect and, therefore, that it was for the legislature in the exercise of its discretion to decide this question and if it considered that the remedy was effective pass such a statute in the interest of public health. Under this decision we must assume that the law requiring vaccination of children in the public schools is a proper one.

But it is urged that while this law may properly be applied to those who in the face of its provisions elect to attend the public schools, still it is of such a character that its remedies ought not to be indirectly forced upon any

unwilling person through the compulsory attendance provisions of the Education Law, and we are reminded of the familiar principle that a penal law should be strictly construed.

Admitting all of the force which this principle justly has, there is another rule of construction which seems to me more potent in this case, and that is the one that statutes relating to the same general subject are to be construed in harmony with each other if possible.

The statute requiring vaccination was adopted in its present form in 1893. (Public Health Law [Laws of 1893, chapter 661], § 200.) The provision requiring attendance upon instruction was first adopted in 1894 (Chapter 671). Thus we find that the legislature adopted the statute providing for compulsory attendance at school the very next year after it had passed the statute requiring vaccination of those attending the public schools, and it does not seem reasonable to assume that it was the legislative intention in passing both of these statutes relating to attendance at school to provide and have it come to pass that unwillingness to comply with the one requiring vaccination might be turned into a good excuse for disobeying the other one concerning attendance. It is hardly to be assumed that when the legislature passed the later statute there had slipped from its theoretical mind remembrance of the other law providing a very important condition of attendance at public schools and if it had purposed that a child might be excused from attendance by reason of the unwillingness of its parent to have it vaccinated, I cannot but believe that something would have been said on that subject.

It does not require much spirit of prophecy to foresee what will follow a contrary construction of the statutes. If a parent may escape all obligation under the statute requiring him to send his children to school by simply alleging that he does not believe in vaccination, the policy of the state to give some education to all children, if

necessary by compelling measures, will become more or less of a farce under existing legislation.

It is to be borne in mind in this connection that it has been held by the Supreme Court of the United States that a statute compelling vaccination is constitutional. (*Jacobson* v. *Mass.*, 197 U. S. 11.)

Therefore, at least under general and ordinary conditions, I do not believe that a parent may escape his duties under the Education Law by pleading simple unwillingness to have his child attend the public schools subject to the condition of vaccination.

So far as the evidence discloses the defendant's refusal to comply with the requirements of attendance at school was arbitrary and capricious, and as one reads the record and argument of his counsel the impression somehow arises that he was more interested in asserting his right to refuse to comply with the law than he was actuated by the purpose of protecting his child from some possible or supposed injury.

I think there is still another reason why the defendant was not excused for disobedience of the law requiring him to see to the education of his child.

The vaccination statute which we have been considering applies only to the public schools. It is well known that there are schools of other kinds and classes which might have been attended by the defendant's child where attendance would not have been subject to the condition which he now urges as an excuse for his failure to send his child to school. It is answered in his behalf to this suggestion that that would entail expense. This might or might not be so, and even if it were it would not be sufficient to excuse the present position and situation of the defendant. We are made well aware at the present day that the government in the exercise of its police powers does impose many regulations which involve trouble and expense, and such trouble and expense have not been regarded as an excuse for non-compliance. If

the defendant does not desire to take advantage of the public schools under the conditions prescribed for their operation, it very possibly may result that he will incur some additional trouble in the education of his children elsewhere. The choice of courses rests with him and the burdens of either will doubtless be fully compensated by the benefits to accrue from furnishing an education to his children.

The order should be affirmed.

WERNER, CHASE, COLLIN, CUDDEBACK and HOGAN, JJ., concur; WILLARD BARTLETT, Ch. J., concurs on ground last stated in opinion.

Order affirmed.