LAWRENCE F. RHEA, by His Guardian *ad Litem,* William F. Rhea, Appellant, v. BOARD OF EDUCATION OF DEVILS LAKE SPECIAL SCHOOL DISTRICT, a Corporation, Respondent.

(171 N. W. 103.)

**Schools and school districts — board of health — right to attend public schools — vaccination.**

1. Section 400 of the Compiled Laws of 1913, making it the duty of the board of health to make and enforce all needful rules and regulations for the prevention and cure of contagious and infectious diseases, is construed and *held* not to authorize the board of health to issue an order denying to children the right to attend the public schools except upon condition of being vaccinated, where it appears that there is no prevailing epidemic of smallpox and no imminent danger from this disease is reasonably to be anticipated.

**Schools and school districts — exclusion from school.**

2. Sections 1346 and 426 of the Compiled Laws of 1913, defining the duties of school officers with reference to the supervision of the health of school children and their exclusion from schools when infected with infectious or contagious diseases, are construed and *held* not to authorize the exclusion for nonvaccination, in the absence of a showing of danger due to the existence of smallpox in the community, or that such danger is reasonably imminent.

**Schools and school districts — vaccination of minors — exclusion from schools.**

3. Section 425 of the Compiled Laws of 1913, which provides for the vaccination of minors, and § 426, which enumerates the causes for which children may be excluded from schools, among which nonvaccination is not included, are

41 N. D.—29.

construed together, and it is *held* that the reasonable construction is that children are not to be excluded from schools on the sole ground of nonvaccination.

Opinion filed January 31, 1919.

Appeal from the District Court of Ramsey County, Honorable *C. W. Buttz,* Judge.

Reversed and a writ of mandamus awarded.

*G. W. Young, W. M. Anderson,* and *Fred. H. Hartwell,* for appellant.

In the absence of any statute making vaccination a condition precedent to the right of admission to the public schools, neither a board of health having general control of matters affecting the public health, nor a school board, acting under its general power or under the board of health, has authority to exclude children from the public schools where smallpox does not already exist, or is reasonably apprehended. Potts v. Breen, 167 Ill. 67, 47 N. E. 81; Lawbaugh v. Board of Education, 177 Ill. 572, 52 N. E. 850; Trustees v. McMurtry, 169 Ky. 457, 184 S. W. 457; Mathews v. Kalamazoo Bd. of Edu. 127 Mich. 530, 86 N. W. 1036; State v. Burdge, 95 Wis. 390, 70 N. W. 347; Osborn v. Russell, 64 Kan. 507, 68 Pac. 60; Glover v. Board of Education, 14 S. D. 149, 84 N. W. 761; School Directors v. Breen, 60 Ill. App. 201, affirmed in 167 Ill. 67; People v. Board of Education, 234 Ill. 422, 84 N. E. 1046; Inferentially in Hill v. Bickers, 171 Ky. 703, 188 S. W. 766; Board of Trustees v. McMurtry, 169 Ky. 457, 184 S. W. 390; State v. Turney, 31 Ohio C. C. 222; Waldschmidt v. New Braunfels, 193 S. W. 86, 1077.

*William Langer,* Attorney General, *George K. Foster,* Assistant Attorney General, *Cuthbert & Smythe* and *Rolla F. Hunt,* State's Attorney, for respondent.

The motion to quash the alternative writ may be made after the answer and return to the petition and writ have been made, without withdrawing the answer and return. 26 Cyc. 463, note 68; High, Extr. Leg. Rem. § 521; Commercial Bank v. Canal Comrs. 10 Wend. 26; Haskins v. Scott County, 51 Miss. 406.

The court will take judicial notice of the fact that the term "vaccinated" used in § 425, C. D. 1913, means inoculated with the virus

of cow pox is a prophylactic against smallpox. Lee v. Marsh, 230 Pa. 351, 79 Atl. 564; 4 Words & Phrases, 2d Series, title "Vaccination."

Courts will take judicial notice as a matter of common knowledge that a great majority of medical writers and practitioners advocate vaccination, and that vaccination is commonly believed by the people of the state to be a preventive of smallpox. Re Viemeister, 179 N. Y. 241, 70 L.R.A. 799, 103 Am. St. Rep. 862, 72 N. E. 99; Auten v. Board of Directors of Special School Dist. (Ark.) 104 S. W. 130; State v. Hay, 126 N. C. 1003, 49 L.R.A. 589, 35 S. E. 461.

Statutes requiring compulsory vaccination are a valid exercise of the police power. Jacobson v. Massachusetts, 197 U. S. 31, note; 3 Bouvier's Law Dict., title Vaccination; 1 American Dig. title Vaccination; 22 New International Enc. p. 842; Re Viemeister, 179 N. Y. 239, 70 L.R.A. 798, 72 N. E. 99, 103 Am. St. Rep. 860; Kidd v. Pearson, 128 U. S. 1, 26, 32 L. ed. 346, 352; Watertown v. Nayo, 109 Mass. 318; Slaughter House Cases, 16 Wall. 36, 21 L. ed. 394; Watertown v. Mayo, 109 Mass. 315; 12 C. J. §§ 333, 390, 425, pp. 848, 913; Morris v. Columbus, 102 Ga. 796, 42 L.R.A. 178, 30 S. E. 850, 66 Am. St. Rep. 247; Abeel v. Clark, 84 Cal. 226, 24 Pac. 383; French v. Davidson, 143 Cal. 658, 77 Pac. 663; Field v. Robinson, 198 Pa. 638, 48 Atl. 873; Stull v. Reber, 215 Pa. 156, 64 Atl. 419; 7 Ann. Cas. 415.

The granting of power to the state board of health to order school children to be vaccinated is not an improper delegation of legislative power. Neer v. State Live Stock Sanitary Bd. (N. D.) 168 N. W. 605; Blue v. Beach, 155 Ind. 132, 50 L.R.A. 69, 56 N. E. 93, 80 Am. St. Rep. 194, 204, 205; citing Cooley, Const. Lim. 114; State v. Chittenden, 127 Wis. 515, 107 N. W. 516; Dowling v. Lancashire, Ins. Co. 92 Wis. 70, 31 L.R.A. 114, 65 N. W. 739; Adams v. Beloit, 105 Wis. 368, 47 L.R.A. 444, 81 N. W. 870; Angellus v. Sullivan, 158 C. C. A. 280, 246 Fed. 60; United States v. Sugar, 243 Fed. 423. See also Re Griner, 16 Wis. 423; Cook v. Burnquist, 242 Fed. 329; United States v. Cudahy Packing Co. 243 Fed. 441; State v. Turner, 37 N. D. 635, 164 N. W. 924.

It is not necessary that an epidemic exist to make the vaccination order valid. Westlake v. Anderson, 33 N. D. 330, 156 N. W. 927; State v. Normand, 76 N. H. 541, 85 Atl. 899, Ann. Cas. 1913E, 996;

State v. Morse, 84 Vt. 387, 34 L.R.A.(N.S.) 190, 80 Atl. 189; 2 Ann. Cas. 427, note; 3 Ann. Cas. 350, note.

BIRDZELL, J. This is an appeal from a judgment entered in the district court of Ramsey county, which dismisses the appellant's action, quashes an alternative writ of mandamus, and awards costs to the defendant. Although an answer was filed and stipulation entered into by the respective parties, covering certain of the facts alleged, the matter was finally brought to a hearing before the lower court on a motion to quash the alternative writ of mandamus. The correctness of the judgment entered must therefore depend upon the sufficiency of the amended petition of the plaintiff and appellant.

The proceedings were instituted by William F. Rhea, guardian *ad litem* of his son, Lawrence F. Rhea; the latter, at the time the suit was instituted, being a schoolboy thirteen years of age. The defendant is the school corporation of the special school district of the city of Devils Lake. The petition alleges all facts necessary to entitle the plaintiff to attend the public schools maintained by the defendant, unless his exclusion on the ground that he had not been vaccinated be lawful. The facts concerning his exclusion are alleged as follows:

"That on or about the month of July, 1917, the state board of health of the state of North Dakota, without any legal or other authority, attempted to pass and make and issued an order fixing and placing the time of vaccinating children, and directing that all school directors and teachers be and they were thereby ordered to enforce this regulation in their respective districts by requiring every pupil to give to certain authorities satisfactory evidence of vaccination before permission be granted to attend school.

"That said state board of health on or about November 21, 1913, without any legal or other authority so to do, attempted to pass and make and issued the following rule and order, to wit: 'No child shall be permitted to enter any school in the state until satisfactory evidence of vaccination has been given to the proper authorities.' That said rule and order applies to and covers pupils of other schools in the state of North Dakota besides and other pupils than the pupils attending the public schools. . . .

"That the board of education of said Devils Lake special district,

claiming to act under and pursuant to the above-attempted and illegal rules of the state board of health, have unlawfully made an order, without authority, applicable to all the public schools of said Devils Lake special school district, requiring that all pupils shall be vaccinated before being admitted to such schools, and shall present a certificate of successful vaccination to the superintendent or teacher in charge before being admitted as pupils, and have unlawfully and without authority ordered that the superintendent of such public school refuse admission and to impart no instruction to children of proper school age until they shall first have complied with said order."

It is further alleged that the plaintiff is in sound bodily health, and has never been exposed to the infection or either smallpox or varioloid; that, at the time the order of exclusion was promulgated and enforced against him and for a long time past, there was and had not been a case of smallpox within the Devils Lake special school district; that the disease had never been epidemic within the state of North Dakota; and that there was no reason to apprehend the appearance of smallpox in the defendant district.

The authority upon which the defendant relies to support its action in excluding the plaintiff from attendance upon the school is found in the sections of the Code which contain the expression of the powers of the state board of health and of school boards, and which require parents and guardians to have minors under their control vaccinated. Section 400 of the Compiled Laws of 1913 makes it the duty of the board of health: "3. To make and enforce all needful rules and regulations for the prevention and cure, and to prevent the spread of any contagious, infectious, or malarial diseases among persons and domestic animals." By § 1346, Compiled Laws of 1913, the boards of all school corporations are authorized to employ physicians as medical inspectors, and it is made the duty of the medical inspector to "co-operate with state, county, and township boards of health in dealing with contagious and infectious diseases." Section 426 of the Compiled Laws of 1913 makes it the specific duty of principals, superintendents, teachers, parents, and guardians of children to refuse to permit any child having any contagious or infectious disease, including smallpox, to attend any public or private school. Also to refuse such permission to any child residing in any house in which any such disease exists or has recently

existed.  Section 425 of the Compiled Laws of 1913 is as follows:
"Each parent or guardian having the care, custody, or control of any
minor or other person shall cause such minor or other person to be
vaccinated."  Section 433, Compiled Laws of 1913, declares any per-
son not complying with the provisions of the article, of which § 425 is
a part, to be guilty of a misdemeanor and punishable by a fine of not
less than $10 nor more than $50, or imprisonment in the county jail,
or both.

Other provisions of the Constitution and the statutes bearing upon
the case are those defining the public policy with reference to free
schools and compulsory attendance.  Section 147 of the Constitution
makes it the duty of the legislative assembly to provide "for the es-
tablishment and maintenance of a system of public schools which shall
be open to all children of the state of North Dakota and free from
sectarian control."  Section 1343, Compiled Laws of 1913, makes all
public schools "at all times equally free, open, and accessible to all
children over six and under twenty-one years of age residing in the dis-
trict."  Section 1342, Compiled Laws of 1913, provides for compulsory
attendance of children between the ages of eight and fifteen, and· §
1344, Compiled Laws of 1913, penalizes parents, guardians, and other
persons failing to comply with the preceding requirements.

The question for our determination is whether or not, under the
foregoing statutes, the board of education of Devils Lake was legally
justified in excluding the plaintiff from the schools on the ground that
he had not been vaccinated.  While the researches of counsel and our
own investigations have failed to disclose the existence of any direct
authority upon the exact question presented under the facts in this
case, it appears that there are ample precedents for the principles which
we deem controlling.  Boards of health and boards of education pos-
sess only such powers as the statutes confer upon them.  The power
to legislate cannot be delegated to them, but when the legislative policy
is determined by the competent legislative authority ample adminis-
trative powers may be vested in executives or boards to the end that
the legislative rule may be properly enforced.  Marshall Field & Co.
v. Clark, 143 U. S. 650, 36 L. ed. 294, 12 Sup. Ct. Rep. 495; State
ex rel. Adams v. Burdge, 95 Wis. 390, 37 L.R.A. 157, 60 Am. St.
Rep. 123, 70 N. W. 347.

There being no statute in this state making vaccination a condition precedent to the right to attend the public schools, we are not confronted with the question of the constitutionality of such a statute, and it is consequently improper to express an opinion concerning the same. We are only called upon to determine the meaning and scope of the statutory provisions previously referred to. Bearing in mind the rule that statutory boards possess only the authority vested in them, the maxim *"expressio unius est exclusio ulterius"* applies with peculiar force where a statute, while clearly defining a duty to exclude pupils from schools on the ground of the danger of spreading contagious and infectious diseases, does not include nonvaccination as a ground for exclusion. This statute, § 426, Comp. Laws 1913, predicates the exclusion either upon the ground that the pupil is infected or that he comes from an infected habitation. It would seem, if it were intended that nonvaccination should be considered a reason for withholding permission to attend schools, that it would be included in any enumeration of the grounds for exclusion in a statute such as § 426, supra. This appeals with peculiar force here, as the compulsory vaccination statute is the immediately preceding section of the same chapter, both being adopted at the same time. See Sess. Laws 1893, chap. 90, §§ 13 and 14. We are of the opinion that the failure to include nonvaccination as a ground for excluding a pupil from attendance at school, in § 426, Compiled Laws of 1913, is a strong indication that such a power was not intended to be given, either to the board of health or a board of education.

But it is contended that, since § 425 of the Compiled Laws of 1913 requires the vaccination of minors generally, it was proper for the state board of health to promulgate an order which would not affect adversely, anyone who had complied with the statute. The failure to comply with the compulsory vaccination statute results in making the one who thus fails guilty of a misdemeanor and subjects him to the prescribed punishment. It is not particularly the function of the board of health to compel compliance with this statute. The board is not the public prosecutor. Even the public prosecutor could not compel vaccination. He can only punish for violations of the statutes, and to exclude one from school on the same ground would be to add a penalty not included in the statute. The powers of the board of health are limited to

such *needful* rules and regulations as may be required for the prevention and spread of contagious and infectious diseases, and the fact that the legislature has purported to make vaccination compulsory does not add to or subtract from the scientific data upon which the board of health may determine whether or not a proposed rule or regulation is "needful." The authorities uniformly hold that a board of health, constituted as our board of health is, possessing requisite general powers for the prevention and spread of contagious diseases, cannot promulgate and enforce rules which merely have a tendency in that direction, but which are not founded upon any existing condition or upon a danger not reasonably to be apprehended. Potts v. Breen, 167 Ill. 67, 39 L.R.A. 152, 59 Am. St. Rep. 262, 47 N. E. 81; Lawbaugh v. Board of Education, 177 Ill. 572, 52 N. E. 850; People ex rel. Jenkins v. Board of Education, 234 Ill. 422, 17 L.R.A.(N.S.) 709, 84 N. E. 1046, 14 Ann. Cas. 943; State ex rel. Adams v. Burdge, 95 Wis. 390, 37 L.R.A. 157, 60 Am. St. Rep. 123, 70 N. W. 347; Blue v. Beach, 155 Ind. 121, 50 L.R.A. 64, 80 Am. St. Rep. 195, 56 N. E. 89; Mathews v. Kalamazoo Bd. of Edu. 127 Mich. 530, 54 L.R.A. 736, 86 N. W. 1036. In an apparently contrary authority in North Carolina, Hutchins v. Durham, 137 N. C. 68, 49 S. E. 46, 2 Ann. Cas. 340, it nevertheless appeared that the general powers were exercised during a violent epidemic.

The authorities principally relied upon by counsel for the respondent will be found to sustain one of two general propositions with which we are not concerned in the instant case. They either support the right of a board of education or a board of health to make vaccination a condition of attendance at school where there is an express statute or ordinance to that effect, as in State v. Hay, 126 N. C. 999, 49 L.R.A. 588, 78 Am. St. Rep. 691, 35 S. E. 459; Morris v. Columbus, 102 Ga. 792, 42 L.R.A. 175, 66 Am. St. Rep. 243, 30 S. E. 850; Re Viemeister, 179 N. Y. 235, 70 L.R.A. 796, 103 Am. St. Rep. 859, 72 N. E. 97, 1 Ann. Cas. 334; People v. Ekerold, 211 N. Y. 386, L.R.A. 1915D, 223, 105 N. E. 670, Ann. Cas. 1915C, 552; Duffield v. Williamsport School Dist. 162 Pa. 476, 25 L.R.A. 152, 29 Atl. 742; Bissell v. Davison, 65 Conn. 183, 29 L.R.A. 251, 32 Atl. 348; Com. v. Pear, 183 Mass. 242, 67 L.R.A. 935, 66 N. E. 719; Stull v. Reber, 215 Pa. 156, 64 Atl. 419, 7 Ann. Cas. 415; State ex rel. McFadden

v. Shorrock, 55 Wash. 208, 104 Pac. 214; Abeel v. Clark, 84 Cal. 226, 24 Pac. 383; and French v. Davidson, 143 Cal. 658, 77 Pac. 663; or they support the right of such boards to exercise the power to compel vaccination or exclusion as a means of controlling and preventing the spread of the disease during an actual or reasonably imminent epidemic, as in Com. v. Pear, 183 Mass. 242, 67 L.R.A. 935, 66 N. E. 719; Jacobson v. Massachusetts, 197 U. S. 11, 49 L. ed. 643, 25 Sup. Ct. Rep. 358, 3 Ann. Cas. 765; Blue v. Beach, 155 Ind. 121, 50 L.R.A. 64, 80 Am. St. Rep. 195, 56 N. E. 89; State ex rel. Freeman v. Zimmerman, 86 Minn. 353, 58 L.R.A. 78, 91 Am. St. Rep. 351, 90 N. W. 783; State ex rel. O'Bannon v. Cole, 220 Mo. 697, 22 L.R.A.(N.S.) 986, 119 S. W. 424; Glover v. Board of Education, 14 S. D. 139, 84 N. W. 761; Zucht v. San Antonio School Bd. — Tex. Civ. App. —, 170 S. W. 840; State ex rel. Cox v. Board of Education, 21 Utah, 401, 60 Pac. 1013, and Hutchins v. Durham, 137 N. C. 68, 49 S. E. 46, 2 Ann. Cas. 340. See also L.R.A.1915D, 223, note. We are in no wise disposed to question the latter of these two propositions; and, since the former involves a constitutional question not presented in this case, judicial propriety requires that we should refrain from expressing an opinion.

For the foregoing reasons the judgment appealed from is reversed.

ROBINSON, J. (concurring). The nonvaccination of children—is it a cause for excluding them from the public schools in a state where smallpox does not prevail, and where the sickness and death resulting from vaccination would far exceed that now resulting from smallpox —that is the question. We must consider not only the statutes, but also the origin and nature of smallpox. It is a disease which originates in filth, the crowding of people together, the lack of pure air, good food, and good sanitary conditions. It prevails and becomes epidemic only in countries where the population is dense and the sanitary conditions are bad. It was in such countries, and in days when sanitation was unknown, that the doctrine of vaccination was promulgated and adopted as a religious creed. Gradually it spread to other countries where conditions are so different that vaccination is justly regarded as a menace and a curse; and where, as it appears, the primary purpose of vaccination is to give a living to the vaccinators. In this great

Northwest the disease has never prevailed to any considerable extent, and it has never become epidemic. Hence, were vaccination to become general, it would be certain to cause sickness or death of a thousand children where one child now sickens and dies from smallpox. Of course a different story is told by the class that reap a golden harvest from vaccination and the diseases caused by it. Yet, because of their self-interest, their doctrine must be received with the greatest care and scrutiny. Every person of common sense and observation must know that it is not the welfare of the children that causes the vaccinators to preach their doctrines and to incur the expense of lobbying for vaccination statutes. Certain it is that in this sparsely settled prairie country, vaccination is not necessary to prevent the spread of smallpox or pig cholera. And if anyone says to the contrary, he either does not know the facts, or he has no regard for truth.

England, with its dense population and unsanitary conditions, was the first country to adopt compulsory vaccination, but there it has been denounced and abandoned. In the city of Leicester vaccination has long since been tabooed, and there, because of special regard for cleanliness and good sanitation, the people fear no smallpox. But in Prussia, Germany, and other such countries, the light shineth in darkness and the darkness comprehendeth it not.

In the book of Dr. Peebles on vaccination there are statistics to the effect that 25,000 children are annually slaughtered by diseases innoculated into the system by compulsory vaccination. It is shown beyond doubt that vaccination is not infrequently the cause of death, syphilis, cancer, consumption, eczema, leprosy, and other diseases. It is shown that if vaccination has any tendency to prevent an attack of smallpox, the remedy is worse than the disease.

Smallpox is the least dangerous of the infectious diseases. With proper care no person dies of smallpox, and the disease gives the patient and his descendants more or less immunity from other diseases. It commences with a fever and takes the patient to bed several days before the disease becomes infectious. Its infectious character commences (as the fever subsides) with the formation of small, peculiar cutaneous eruptions or pustules all over the body, and these emit the offensive smelling infection. At the close of three or four weeks, with proper care, the patient recovers and becomes hale and hearty, with an im-

munity from the disease. It is true that smallpox and other infectious diseases do not prevail as much as formerly, but that is not due to vaccination. As time passes sanitary conditions improve; men and animals become more and more immune. Nature is everywhere working and learning by slow degrees to protect both the animal and the vegetable. The pig that has survived an attack of cholera is immune, and for several generations its breed is partly immune. In some southern countries where pigs are kept in a filthy condition or live on droppings from cattle, they are very subject to cholera, and there pig vaccination and inoculation may be a proper sanitary measure; but in a northern state, where the pig has a good pasture, a good wallow, and is well fed and housed, there is no pig cholera and hence pig vaccination would be a barbarism. Indeed, the pig growers would rebel against it; and so of child vaccination in a state where smallpox does not prevail, it has no excuse; it is a barbarism. It is the duty of child growers to rebel against it. Surely the child should have as much protection as the pig.

The question is to be decided on the fundamental law, the statutes, common knowledge, and pure reason.

By the Constitution the public schools must be open to the children of the state. § 147. But when a child has an infectious disease or resides in an infected house, then it may not attend the schools. § 426. By an obsolete statute every minor person must be vaccinated, not excepting those who have had the smallpox. § 425. And by a general order the state board of health has tried to amend the Constitution and the statute so as to exclude from the schools a child that is not vaccinated. Its power is only "to make needful rules to prevent the spread of infectious diseases among persons and domestic animals." § 400. It has no power to amend either the Constitution or the statute, or to add to or take from the same, one jot or tittle.

In Egypt, Palestine, and other semitropical countries, under conditions which prevailed three thousand years ago, circumcision was accounted a sanitary measure, and not merely a religious rite. But now there is no such reason for circumcision, for pig or child vaccination, under the conditions here prevailing in this twentieth century. We live in a sparsely settled northern country under a Constitution which guarantees personal liberty, and the right of every per-

son to pursue and obtain safety and happiness, and the right of every child to attend the public schools. If it be conceded that vaccination is a safe preventive of a bad disease (and it is not), still children do not cry for it, and it has not yet become a religious rite. Vaccination has never prevented any child from carrying to school the infection of smallpox. The disease at once takes a child to bed and prevents it from going to school.

In writing a judicial opinion it is customary to fortify it by a reference to authorities, that is, to decisions in similar cases, but here it is not possible because all the judicial decisions have been given under different statutes and conditions. In Europe, Asia, Africa, and in the Atlantic and Pacific states the conditions are so different that there vaccination may be good thing, while in this great Northwest it might prove a veritable curse.

In Com. v. Jacobsen (1903) 183 Mass. 242, 67 L.R.A. 935, 66 N. E. 719, it was held by the supreme court of Massachusetts, and by a majority of the United States Supreme Court, that vaccination may be required of all the inhabitants of a state where smallpox is prevalent and increasing. 197 U. S. 11, 49 L. ed. 643, 25 Sup. Ct. Rep. 358, 3 Ann. Cas. 765.

The New York court of appeals has sustained a statute excluding from schools all children not vaccinated. Re Viemeister, 179 N. Y. 235, 70 L.R.A. 796, 103 Am. St. Rep. 859, 72 N. E. 97, 1 Ann. Cas. 334. And so it has been held in Pennsylvania and in several other densely populated states. It is quite remarkable that judicial decisions do commonly run in the ruts of ages, regardless of changing conditions. Thus some two hundred years ago, in Massachusetts, because of custom and because it is written: Thou shalt not suffer a wizard to live, judges were found ready to convict and sentence the poor women, who were burned for witchcraft. In every age and country some judges have been too ready to follow the example of Pontius Pilate,—to wash their hands,—and to blame a supposed law or a precedent for their unjust decisions.

In Illinois it is held that the legal right of a child to attend the public school may not be denied unless in localities where smallpox prevails. Potts v. Breen, 167 Ill. 67, 39 L.R.A. 152, 59 Am. St. Rep. 262, 47 N. E. 81.

In 1908, under a statute giving the city of Chicago power to make all regulations and pass all ordinances necessary and expedient for the promotion of the public health or the suppression of disease, the city passed an ordinance excluding children from the public schools unless vaccinated, and it was held null and void. People ex rel. Jenkins v. Board of Education, 234 Ill. 422, 17 L.R.A.(N.S.) 709, 84 N. E. 1046, 14 Ann. Cas. 943.

Finally the proper safeguard is by sanitation. The chances are that within a generation vaccination will cease to exist. It will go the way of inoculation, bleeding, purging, and salivation. The vaccinators must learn to live without sowing the seeds of death and disease.

Order reversed. Mandamus awarded.

COLE, District Judge. I dissent. It seems to me that the majority opinion in this case is straining very hard at statutory construction that absolutely kills the intent and purpose of the statute, the purpose of the legislative body.

Stress is laid upon the word "prevention" in the majority opinion, and the word "cure" used in connection therewith. It seems to me that the majority opinion has not given proper attention to the definition of the word "prevent" or "prevention." This is defined in the different dictionaries and given a very specific and well-understood meaning, and it has also been defined by judicial opinion. In the case of Green v. State, 109 Ga. at page 536, 35 S. E. 97, 12 Am. Crim. Rep. 542, also the citation above on page 5545 of Words & Phrases, vol. 6, the following definition is given: " 'Prevent' means to intercept; to hinder; to frustrate; to stop; to thwart; to hinder from happening by means of previous measures; keep from occurring or being brought about as an event or result; ward off; preclude; hinder, as to prevent the escape of a prisoner; to stop in advance from some act or operation; intercept or bar the action of; check; restrain. As used in an indictment charging that the accused persons did, in a violent and tumultuous manner, prevent the sheriff from doing a certain act, embraces the idea that the accused persons necessarily committed an act of some character."

On the same page in the same volume of Words and Phrases the definition given to "prevent" is also quoted from the case of Ex

parte Florence, 78 Ala. 419, 421: " 'Prevent,' as used in Acts 1878–79,. p. 413, conferring power on the municipal authorities of a city to prevent the selling of spirituous . . . liquors within the corporate limits whenever they may deem it expedient, is synonymous with 'prohibit.' The difference between 'prevent' and 'prohibit' is not material. If there is any difference, 'prevent' is the stronger word,— conveying the idea of prohibition, and the use of the means necessary to give it effect."

It will be seen from the judicial definitions, herein cited, and from an examination of the definitions of the word "prevent" in the different dictionaries, that "prevention" means immunity, and not "cure," and in defining our statute this effect should be kept in mind.

Subdivision 3 of § 400 of the Compiled Laws of 1913 is as follows: "To make and enforce all needful rules and regulations for the prevention and cure, and to prevent the spread of any contagious, infectious, or malarial diseases among persons and domestic animals."

The first effect of this subdivision makes prevention one of the important features of the statute, and prevention means herein prohibition, and prohibition necessarily means immunity, else the purpose of the word would be largely meaningless. It should also be borne in mind that statutes are to be given a broad construction so as to carry out what is evidently the intent and purpose of the people and the legislative body.

All through the statutes of this state run this idea and this provision, that is to say, in substance, that the rule of common law that statutes in derogation thereof are to be strictly construed have no application to our Codes, and that our Codes are to be construed liberally with the purpose of effecting what was the evident intent and purpose of the legislative body as representing the people. When the board of health is given power to prevent contagious diseases, prevention being used in the statute, it means the board is given power to provide immunity against the disease coming into the several communities, or into the state itself. If this be not so then the word "prevention" is subordinate to the word "cure," and would not operate at all to prohibit or prevent the coming in of contagious diseases, but would simply mean that, after the contagious disease once came into the community, it should be prevented from multiplying or becoming greater and more

dangerous in its effect than it was or would be at the time that the board of health should make its order.

Such seems to me to be the result of the reasoning by Judge Birdzell, especially under the well-defined judicial definition of the word "prevent," and also the definition of the same word in the several dictionaries. If I am right in my construction clearly the statute is intended to give the board of health power to prevent the attendance at public schools of pupils who cannot show that they have been vaccinated unless some reputable physician certifies that their physical condition is such that it would be dangerous for them to be vaccinated. I am clearly and emphatically of the opinion that Judge Birdzell is entirely in error when he says the constitutional question is not before this court, and it would be improper for us to consider that. Surely it was urged in argument and in the briefs, and it seems to me it necessarily follows as a part of the matter before the court under the definition that I have given to the word "prevent" as used in our statute, and besides this the Constitution of the state provides in § 101 that every point fairly arising upon the record of the case shall be considered and decided by the supreme court, and that the reasons therefor shall be concisely stated in writing. Surely in the arguments and in the briefs of counsel and with the entire matter before the court, in construing these statutes and the order of the board of health, the constitutionality of the power or supposed power of the board of health and the school authorities at Devils Lake are involved, and should have a decision from this court in this case, and more especially as it will tend to prevent future litigation and encumbering of trial courts as well as the supreme court with unnecessary hearings and unnecessary determinations.

I am clearly of the opinion that it is the duty of this court to avoid rendering a decision merely upon some point which may reverse or affirm the case, and not decide the whole matter at issue before it. Litigation is multiplying rapidly, and the courts are being encumbered throughout our state and every subdivision of the state, and it is the duty of the highest judicial tribunal in each state to decide every matter that it fairly can take hold of in any decision that comes up before it for review.

As I have noted before, vaccination is a matter of immunity and a

matter of prevention, and prevention and immunity are allied in the purpose and intent of the statute. Besides the act that is compulsory as to parents to have their children vaccinated naturally means that the legislative body deemed it necessary to have vaccination, and § 425 of the Compiled Laws of 1913, being broad and covering not only parents, but as well guardians who have the care, custody, or control of minors, shall cause such minors to be vaccinated, certainly means that the minor should be vaccinated before he is permitted to go to school, because it cannot but mean that the minor should be vaccinated before he is permitted to go to school, or to go at large among the people, although he is not so prevented even though not vaccinated. A reasonable construction should be given to each statute so as to give it full force and effect, and it would be unreasonable to construe out of the statute this provision for the vaccination of a minor a meaning that would say that, because in express language it does not provide that children may not be permitted to attend school without being vaccinated, therefore such order cannot be made a part of the preventive orders which the boards of health are allowed to promulgate.

I desire to note at this time a few decisions of importance in connection with the present case. In the case of Bissell v. Davison, 65 Conn. 183, 29 L.R.A. 251, 32 Atl. 348, it is intimated that the enforcement of the vaccination statute is not dependent on the actual presence of reasonable apprehension of smallpox.

In the case of Stull v. Reber, 215 Pa. 156, 64 Atl. 419, 7 Ann. Cas. 415, it is said it is no ground for the issuance of an injunction restraining the enforcement, in the schools of a given community, of a statute requiring the exclusion from the public schools who have not been vaccinated, that the community has enjoyed immunity from smallpox for a period of forty years.

The case of State v. Hay, 126 N. C. 999, 49 L.R.A. 588, 78 Am. St. Rep. 691, 35 S. E. 459, is a case of great interest considered in connection with the case at bar, and should be read by the court.

The case of Streich v. Board of Education, 34 S. D. at page 169, L.R.A.1915A, 632, 147 N. W. 779, Ann. Cas. 1917A, 760, is of interest in connection with the case at bar, although not directly in point.

The case of Jacobson v. Massachusetts, 197 U. S. 11, 49 L. ed. 643,

25 Sup. Ct. Rep. 358, 3 Ann. Cas. 765, states that judicial notice will be taken that vaccination is commonly believed to be a safe and valuable means of preventing the spread of smallpox, and that this belief is supported by high medical authority. See also in this connection Wright v. Hart, 182 N. Y. 330, 2 L.R.A.(N.S.) 349, 75 N. E. 404, 3 Ann. Cas. 263, wherein the foregoing case is cited and approved. Also Com. v. Strauss, 191 Mass. 545, 11 L.R.A.(N.S.) 968, 78 N. E. 136, 6 Ann. Cas. 842, and also New York ex rel. Lieberman v. Van De Carr, 199 U. S. 558, 50 L. ed. 309, 26 Sup. Ct. Rep. 144, both citing the foregoing case. See also 5 L.R.A.(N.S.) 727.

The expression used by Judge Birdzell, *"expressio unius est exclusio ulterius,"* has been given a strained construction, and a strained construction that, in my judgment, is not warranted either in this case or in its application to any other case. In connection with the construction given to it the case of State ex rel. O'Bannon v. Cole, 220 Mo. at page 697, 119 S. W. 424, should be read and applied. See same case in 22 L.R.A.(N.S.) 986.

A number of other authorities might be multiplied, and the mere fact that the greater number are on statutory provisions does not justify, in my opinion, the opinion of Judge Birdzell in his construction of the statute, nor does it do away with the right of the board of health as a preventive act to deny the right of attendance in public schools to pupils who cannot present a vaccination certificate.

There were other questions discussed and considered by the court, and a few references to them and to a general discussion of the matters involved, as they appear to me in this case, are herewith submitted.

It may be properly said that smallpox, against which and to prevent which vaccination is ordered, is a disease that when it attacks a person does in most cases permanent and irreparable injury. A large number of the patients attacked by smallpox have their faces permanently disfigured, and this fact, on account of the weakness of human nature, subjects each individual having had an attack of smallpox to more or less social ostracism and likewise to more or less business ostracism throughout his or her entire life. This is a fact that may be said to have become patent, and therefore the state in its sovereignty may use all legitimate power to protect the individual as well as to protect the community. The purpose of vaccination is to establish im-

munity, not simply to erect a bar when an epidemic is threatening or likely. When this fact is kept in view, the vaccination laws will be better understood and more fully appreciated.

The state has a right through its police power to provide for the future as well as the present welfare of not only communities, but of the individuals making up the several communities, and this being so it has the right to provide immunity against possible permanent disfigurement of any individual and the several individuals in the communities by precautionary measures. The schools of the country are the groundwork of our present and future democracy. Public schools are the public levers that lift the burden and carry the burden of statehood and also carry the burden of social and religious progress and perpetuity. For these reasons every reasonable protection should be thrown about them and about the individual pupil members. This would seem to be legitimate and wise reasoning, and therefore should be considered in considering the question of the constitutionality of the legislative act and the order of the board put in question in this appeal.

If the order is not broad enough to take in all that it should, that is to say, if it would have been proper and wise to compel the vaccination of teachers, or rather to compel teachers to prove that they had been vaccinated before they would be permitted to teach, and if it would have been wise to provide for the revaccination of pupils after seven years lapsed, these matters cannot and should not of themselves defeat the present law or the order appealed from if it of itself is proper and reasonable legislation. This would seem to be a rightful interpretation of statutes, and more especially as upon every statute book in every state in the Union can be found a multitude of laws incomplete in themselves as to the full purpose which the people may have in mind and yet they are constitutional and enforced.

There was another matter urged against the order appealed from and urged as a reason why it should not be enforced, and that was that the appellant has conscientious scruples against vaccination. This was not urged as strenuously as some of the other contentions, yet it was dwelt upon to some extent by the counsel for the appellant. It may be said in this connection that, if alleged conscientious scruples were a factor in this case, they could also be a factor in practically everything that comes up that refers to the enforcement and execution of the police

power that does not directly pertain to the commission of a criminal offense, either felonious or misdemeanor.

The whole people must be served, and the best interests of society, the state, and the individual are common, and no conscientious scruples of individuals can be permitted to outweigh and defeat necessary public legislation or necessary public administrative acts. To make conscientious scruples a basis for negativing a law or an administrative order would be to bring in disorder, and if carried far enough, bring in a condition of affairs that would at least border very near to a state of anarchy.

The following cases are in point and illustrative of the law and its constitutionality, which also involves the legality of the order appealed from, and a careful reading of them will more fully sustain the proposition hereinbefore noted.

Re Viemeister, 179 N. Y. 240, 70 L.R.A. 796, 103 Am. St. Rep. 859, 72 N. E. 97, 1 Ann. Cas. 334, in which appears the following language as used by that court, together with citations: "A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts. While the power to take judicial notice is to be exercised with caution, and due care taken to see that the subject comes within the limits of common knowledge, still, when according to the memory and conscience of the judge, instructed by recourse to such sources of information as he deems trustworthy, the matter is clearly within those limits, the power may be exercised by treating the fact as proved without allegation of proof."

Also the following: "The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone. The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which according to the common belief of the people are adapted to prevent the spread of contagious diseases. In a free country, where the government is by the people through their chosen representatives, practical legislation admits of no other standard of action; for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of

the Constitution, and would sanction measures opposed to a republican form of government."

State ex rel. Milhoof v. Board of Education, 76 Ohio St. 306, 81 N. E. 568, 10 Ann. Cas. 879. In this case the following language is used: "Such claim necessarily assumes that the power conferred upon boards of education by § 3986, Revised Statutes, cannot rightfully be exercised by them, unless at the time of its exercise smallpox actually exists in the community, or an epidemic of the disease is then reasonably to be apprehended. But the statute conferring the power has imposed no such condition or limitation upon its exercise, and we know of no reason or authority from which such condition may be implied. It is matter of universal knowledge that, with our present rapid means of intercommunication, smallpox is liable to make its appearance at any moment in any community. If then, as is the common belief, vaccination is a preventive, or a protection against this dread disease, which Macauley denominated 'the most terrible of all ministers of death,' certainly it may not be said that for a board of education to adopt, as a protective and precautionary measure, a rule or regulation requiring vaccination as a prerequisite to the right to attend public schools, is an unwarranted or unreasonable exercise of the power expressly conferred upon it by statute, even though smallpox does not at the time actually exist in the district or community, for it may truly be said that 'an ounce of prevention is worth a pound of cure.'"

In Auten v. School Bd. 83 Ark. 435, 104 S. W. 130, the following is a part of the language used: "It is a matter of common knowledge of which the court can take judicial notice that the great majority of medical writers and practitioners advocate vaccination as a safe and efficient means of protecting cities and thickly settled communities against the scourge of smallpox."

In the case of Stull v. Reber, 215 Pa. 163, 64 Atl. 419, 7 Ann. Cas. 415, the following language is used: "One expression in the opinion of the court below, and in some of the cases cited in the argument, requires a passing note. The act is not a penal statute. It is a broad, general act relating to the health of the whole population of the commonwealth. It is not, therefore, to be construed or administered by the rigid technical rules applicable to penal laws, but fairly accordingly to its intent, neither narrowing it to the letter, to the exclusion of cases

clearly within such intent, nor stretching it beyond its legitimate scope to cover matters not clearly meant to be included. It is an act touching very closely common rights and privileges, and therefore specially requiring a common-sense administration."

See also Field v. Robinson, 198 Pa. 638, 48 Atl. 873.

In Bissell v. Davison, 65 Conn. 189, 29 L.R.A. 251, 32 Atl. 348, the following language is used: "But the plaintiff urges that the vote was not warranted by law because, at the time it was passed, 'it does not appear that there was a single case of smallpox in the town of New Britain, nor any indication that an epidemic of that disease was likely to present itself.' This claim assumes that the power in question cannot be exercised by the school committee unless at the time of its exercise one or more cases of smallpox exist in town, or an epidemic of the disease is reasonably to be apprehended. But the statute conferring the power has imposed no such conditions upon its exercise, and we see no good reasons why any such conditions should be implied."

A careful reading and consideration of these cases will more fully illustrate what I have stated herein, and will give greater light on the matter here in controversy. The police power of the state is a comprehensive power and one which becomes broader both by legislation and construction as our common country gets a greater and more congested population. What may have been sufficient laws ten or twenty years ago are not sufficient for all matters at the present time. Any law or laws that are now sufficient in a great many respects in reference to police power may not be sufficient laws ten or twenty years hence for the welfare and health of the people. It may be said in this connection that the word "needful" or "needed" must be liberally construed and must admit of a liberal interpretation when applied to administrative and executive powers. If this be not so, controversies may arise and processes be brought into court which would stay the hand of the administrative bodies, to whom falls the duty of the protection of the public health and morals, as well as the private health and private protection of the separate individuals. A strict construction of language in the statutes in question in this case would defeat its purpose. It is not necessary for the boards of health to wait for an actual epidemic nor a threatened epidemic before making an order prohibiting the attendance at school by any pupil who cannot and does

not present a certificate of vaccination from a reputable physician. Because the law does not provide for revaccination or the vaccination of adults does not defeat the purpose and intent of the law, nor in this case negative the power of the board in question to make the order made by it and enforce it.

It is alleged that the law discriminates in favor of class or rather it is class legislation. This contention is without merit. There are municipal ordinances against permitting minors in pool rooms no matter how well the pool rooms are conducted. There are curfew ordinances compelling all children under a certain age to be at home before a certain fixed hour at night. There are a multitude of similar laws, either enacted by the state or municipalities,—all held valid because they serve a useful and necessary purpose. Jurists sometimes get confused in the matter in attempting to define class discrimination. There is no class discrimination when rules and regulations are based upon the matter of age for the protection of persons and property, nor is there class discrimination when police regulations are enacted to cover specific occupations when such regulations are seemingly and wisely necessary. There is class discrimination when any law, order, or regulation undertakes to say that one individual may do and another individual may not do a thing when such individuals are similarly situated, engaged in like occupations, are of mature age, and otherwise alike.

This, however, is not the kind of distinction made in the law governing vaccination. It may be said, further, that the provision for having a parent or guardian see to it that a minor shall be vaccinated gives full authority for boards of education to deny admission to the public schools unless the minor or child of school age is or has been vaccinated. This does not necessarily mean compulsory vaccination except for school privileges. This fact might be further illustrated, but it is not deemed necessary at this time.

The order of the District Court of Ramsey County should be in all things affirmed.