MATHEWS *v.* KALAMAZOO BOARD OF EDUCATION.

SCHOOLS—AUTHORITY OF DISTRICT BOARD — COMPULSORY VAC-CINATION.

A school-district board, by virtue of the authority conferred on it by statute to enact rules for the management of the schools, has no power to adopt a general, continuing rule, operative without regard to varying conditions, excluding from the schools all pupils who have not been vaccinated. LONG and GRANT, JJ., dissenting.

*Certiorari* to Kalamazoo; Adams, J. Submitted April 16, 1901. Decided July 10, 1901.

*Mandamus* by George R. Mathews to compel the board of education of school district No. 1 of the city and township of Kalamazoo to admit relator's children to the public schools. From an order granting the writ, respondent brings *certiorari.* Affirmed.

*Walter R. Taylor*, for relator.

*Alfred J. Mills*, for respondent.

LONG, J. (*dissenting*).    The relator is a taxpayer and resident of the city of Kalamazoo and school district No. 1, above named.    He has three children, aged, respectively, 11, 9, and 7 years; being all within the school age, and entitled to attend the public schools of said district.    It appears that in 1894 the school-district board enacted the following rule:

"No pupil shall be admitted into any public school who cannot furnish satisfactory evidence that he or she has been vaccinated or otherwise secured against smallpox; and no pupil affected with any contagious disease, or coming from a house where such a disease exists shall be allowed to remain in any public school."

This rule has been in force ever since its adoption, and is still in force.    The relator's three children have never been vaccinated.    He sent them to school at the opening of the term in January last, but admission was refused by the respondent because they had not been vaccinated or otherwise protected against smallpox in accordance with the above rule.    Upon such refusal the relator petitioned the circuit court for *mandamus* to compel the board to permit his said children to attend said school notwithstanding such rule.    The court below granted the prayer of the petition.    The case comes into this court by *certiorari.*

Counsel for relator contends that the rule is unreasonable and unconstitutional; that the relator, being a Christian Scientist, cannot conscientiously consent to have his children vaccinated, because to do so would infringe upon his religious belief and scruples; that his children could not be vaccinated without his consent, and therefore, without any act of their own, would be excluded from the enjoyment of the public schools, secured to them by the Constitution; that the statute is mandatory that they shall attend the public schools during a certain portion of the year; and that the parents, as well as the children, are

liable to punishment under the truancy laws of this State
for failure of the children to attend school. It is also con-
tended that there is no statute of the State providing for
compulsory vaccination, and no statute giving any school
district authority or power to require children to be vacci-
nated as a condition precedent to attending school. It is
admitted that there is and has been no smallpox in the city
of Kalamazoo or in such school district No. 1, but it is
known that the disease has been and is prevalent in sev-
eral parts of the United States and of this State.

We do not feel called upon to enter upon or discuss the
question of the religious scruples of the relator. The only
question is whether the respondent had lawful authority
to adopt and enforce the rule complained of. It is not a
rule compelling vaccination, but one adopted for the safety
of the children in attendance upon the school, and for the
safety of the whole community; and providing that those
who do not submit to such protection, such as science and
experience have shown it to be, against smallpox, cannot
be permitted to endanger the lives of those who do comply
therewith.

The respondent district was organized under Act No.
335, Local Acts 1891. The general management and con-
duct of the affairs of the district is vested in a board of
six trustees. By section 8 the board is given power to hire
any and all necessary teachers for the several schools of
the district, and fix the amount of their compensation, to
classify and grade said schools, and to determine the ages
and qualifications for admission therein. By the same
section the board is given authority to enact such rules
and by-laws as may be necessary for the preservation of
all the property belonging to the district, and for the gov-
ernment of the schools, and in reference to all business
connected therewith, and to regulate the conduct of all
persons in the schools and on the grounds belonging to
said district. Section 11 of the act provides:

"It shall be the duty of the board of education * * *
generally to do all things needful and desirable for the

maintenance, prosperity, and success of the schools and library in said district."

Section 34 of the act provides:

"School district No. 1 of the city and township of Kalamazoo shall in all things not herein otherwise provided be governed by, and its powers and duties defined by, the general laws of this State regulating school districts and district libraries therein; and all acts and parts of acts inconsistent with this act are hereby repealed."

The general school law provides:

"The district board shall have the general care of the school, and shall make and enforce suitable rules and regulations for its government and management." 2 Comp. Laws, § 4682.

We think, under these provisions, that the board of trustees had the power to make the rule now sought to be set aside, and that such rule is a reasonable regulation.

A case similar in principle was before the supreme court of Pennsylvania in 1894. *Duffield* v. *School District,* 162 Pa. St. 476 (29 Atl. 742, 25 L. R. A. 152). It appeared there that the school board adopted a resolution providing that "no pupils shall attend the schools of this city except they be vaccinated, or furnish a certificate from a physician that such vaccination has been performed." The child who was excluded from attendance was within the school age and in good health, and was excluded solely on the ground of noncompliance with the rule of the board. *Mandamus* was sought to compel the board to permit the child to attend without complying with the rule. The writ was denied in the court below, and that order affirmed in the supreme court. It was there said:

"We are not required to determine judicially whether the public belief in the efficacy of vaccination is absolutely right or not. We are to consider what is reasonable in view of 'the present state of medical knowledge, and the concurring opinions of the various boards and officers charged with the care of the public health. The answers

of the city and the school board show the belief of the proper authorities to be that a proper regard for the public health and for the children in the public schools requires the adoption of the regulation complained of. They are doing in the utmost good faith what they believe it is their duty to do; and, though the plaintiff might be able to demonstrate by the highest scientific tests that they are mistaken in this respect, that would not be enough. It is not an error in judgment, or a mistake upon some abstruse question of medical science, but an abuse of discretionary power, that justifies the courts in interfering with the conduct of the school board, or setting aside its action. It is conceded that the board might rightfully exclude the plaintiff's son if he was actually sick with, or was just recovering from, the smallpox. Though he might not be affected by it, yet, if another member of the same family was, the right to exclude him, notwithstanding he might be in perfect health, would be conceded. How far shall this right to exclude one for the good of many be carried? That is a question addressed to the official discretion of the proper officers; and, when that discretion is honestly and impartially exercised, the courts will not interfere."

In that case it appeared that by no legislative act had school districts been given express power to prescribe vaccination as a necessary qualification for admission into the common schools, or to suspend or expel pupils for failure to comply with the rule requiring vaccination. It was found that there was smallpox within the city; and we think that court very properly held that it was within the discretionary power of the board to adopt such a rule. See, also, *Blue* v. *Beach*, 155 Ind. 121 (56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195). In the present case, while it did not appear that smallpox was prevalent in the city of Kalamazoo, it did appear that it was in many places within the State. The board enforced the rule as a precautionary measure to prevent the spread of the disease. We think this was within the discretionary power of the board.

The order of the court below should be reversed.

GRANT, J., concurred with LONG, J.

MOORE, J.   I cannot agree with the conclusion reached by Justice LONG.   The children of the relator are of school age, in good health.   They have not got the smallpox, nor have they been exposed to it.   The law of the State makes it their duty to attend school, and it is the duty of the parent to send them.   2 Comp. Laws, § 4847.   In case he fails to do so, he may be subjected to fine or imprisonment, or both, in the discretion of the court.   2 Comp. Laws, § 4848.   The effect of the rule adopted by the school board is to compel the vaccination of the child, or subject him and the parents to the penalties of the law.   The practical result, if this rule can be sustained, is to give the board of education the right to compel vaccination.   It is said the board does not undertake to compel vaccination, but it simply says until the child is vaccinated it cannot attend school.   We have already shown that it is made by law the duty of the child to attend school, and of the parent to send him; and, as long as the broad rule adopted by the board exists, the child must be vaccinated, or it and its parents must be lawbreakers.   If the rule was that, during the prevalence of the smallpox in Kalamazoo, the child could not attend school unless vaccinated, a very different result would be reached.   These epidemics never last very long, and the parent and child might well say, if they desired, they would absent themselves from school during the epidemic; and this could be done without their being lawbreakers.   In the case cited by Justice LONG (*Duffield* v. *School District,* 162 Pa. St. 476, 29 Atl. 742, 25 L. R. A. 152), the record shows that smallpox then existed in the school district; the school board had, because of this fact, and at the request of the board of health, adopted the rule requiring vaccination; a very different case than the case at bar.   In *Abeel* v. *Clark,* 84 Cal. 226 (24 Pac. 383), the legislature itself passed a law requiring vaccination, and it was held to be within the police power; but it is not believed a case can be found where a board of education, under the general power conferred upon it, is held to have the power to pass a general rule shutting the schools against all children not vaccinated.

The question has never before been raised in this State, but the principles involved are not new. In *Potts* v. *Breen*, 167 Ill. 67 (47 N. E. 81, 39 L. R. A. 152, 59 Am. St. Rep. 262), the State board of health adopted a rule that no pupil should attend a public school unless vaccinated, and by their directions the school board excluded unvaccinated children from the school. The power given to the board of health was much greater than that conferred upon the Kalamazoo board of education. In holding that the board of health and the school board had exceeded their authority, the court said:

"While school directors and boards of education are invested with power to establish, provide for, govern, and regulate public schools, they are in these respects nowise subject to the direction or control of the State board of health; and, as before pointed out, they have no authority to exclude children from the public schools on the ground that they refuse to be vaccinated, unless, indeed, in cases of emergency, in the exercise of the police power, it is necessary, or reasonably appears to be necessary, to prevent the contagion of smallpox. Undoubtedly, also, children infected with or exposed to smallpox may be temporarily excluded, or the school be temporarily suspended; but, like the exercise of similar power in other cases, such power is justified by the emergency, and, like the necessity which gives rise to it, ceases when the necessity ceases. No one would contend that a child could be permanently excluded from a public school because it had been exposed to smallpox, or that the school could be permanently closed because of the remote fear that the disease of smallpox might appear in the neighborhood, and that if the school should then be open, and children in attendance upon it, the public would be exposed to the contagion. And, upon the same line of reasoning, without a law making vaccination compulsory, or prescribing it, upon grounds deemed sufficient by the legislature as necessary to the public health, as a condition of admission to or attendance upon the public schools, neither the State board nor any local board has any power to make or enforce a rule or order having the force of a general law in the respects mentioned.   *   *   *   However fully satisfied, by learning and experience, a board might be that anti-toxine would prevent the spread of diphtheria, no one

would contend that a rule enforcing its use as a condition precedent to the admission of a child to the public schools would, as the law now is, be valid. It is a matter of common knowledge that the number of those who seriously object to vaccination is by no means small, and they cannot, except when necessary for the public health, and in conformity to law, be deprived of their right to protect themselves and those under their control from an invasion of their liberties by a practically compulsory inoculation of their bodies with a virus of any description, however meritorious it might be."

In *State* v. *Burdge*, 95 Wis. 390 (70 N. W. 347, 37 L. R. A. 157, 60 Am. St. Rep. 123), the State board of health, under its general powers, adopted a rule excluding from the public schools pupils who had not been vaccinated. The school board undertook to carry out the rule. The court said:

"The police power of the State is relied on to support the rule in question. This power has been defined in varying language, but of substantially the same general import. 'All laws for the protection of life, limb, and health, for the quiet of the person, and for the security of property,' fall within the general police power of the government. 'All persons and property are subjected to all necessary restraints and burdens, to secure the general comfort, health, and prosperity of the State;' and it has been said that 'it is co-extensive with self-protection, and is not inaptly termed "the law of overruling necessity." It is that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort and welfare of society.' Tied. Pol. Pow. 2–5; Cooley, Const. Lim. 572; Redfield, C. J., in *Thorpe* v. *Railroad Co.*, 27 Vt. 140 (62 Am. Dec. 625); *Town of Lakeview* v. *Rose Hill Cemetery Co.*, 70 Ill. 192 (22 Am. Rep. 71); *State* v. *Noyes*, 47 Me. 189. As the police power imposes restrictions and burdens upon the natural and private rights of individuals, it necessarily depends upon the law for its support, and, although of comprehensive and far-reaching character, it is subject to constitutional restrictions; and, in general, it is the province of the lawmaking power to determine in what cases or upon what conditions this power may be exercised. As applied to the present case, the relator had a right, secured by statutory enact-

ment, to have his children continue to attend the city schools in which they were respectively enrolled as pupils; and they, too, had a right to so attend such schools. Whether it be called a 'right' or 'privilege' cannot be important, for in either view it was secured to the relator, and to his children as well, by the positive provisions of law, and was to be enjoyed upon such terms and under such conditions and restrictions as the lawmaking power, within constitutional limits, might impose.

"There is no statute in this State authorizing compulsory vaccination, nor any statute which requires vaccination as one of the conditions of the right or privilege of attending the public schools; and, in the absence of any such statute, we think it cannot be maintained that the rule relied on is a valid exercise of the rightful powers of the State board of health. The State board of health is a creation of the statute, and has only such power as the statute confers. It has no common-law powers. To lawfully exclude the relator's children from the city schools for the cause relied on required such a change in the existing law as the legislature alone could make,—a change that should make vaccination of pupils compulsory, or at least prescribe it as a condition of the right or privilege of attending the public schools generally, or during the occurrence of certain emergencies, or upon the happening of certain contingencies or conditions, in respect to the prevalence of smallpox. The powers of the State board of health, though quite general in terms, must be held to be limited to the enforcement of some statute relating to some particular condition or emergency in respect to the public health; and, although they are to be fairly and liberally construed, yet the statute does not, either expressly or by fair implication, authorize the board to enact a rule or regulation which would have the force of a law changing the statute in relation to the admission, and the right of pupils of a proper school age to attend the public schools."

It is not a question as to what the legislature might do, under the police power, about requiring vaccination as a pre-requisite to attending school; nor is it a question of whether the legislature could confer this power upon the school board. The board of education is a creature of the statute. It possesses only such powers as the statute gives it. The legislature has said who may and should attend

the public schools.    It has nowhere undertaken to confer the power upon the school board to change these conditions by passing a general, continuing rule excluding children from the public schools until they comply with conditions not imposed upon them by the legislative branch of the government.    In what I have said I do not mean to intimate that during the prevalence of diphtheria or smallpox, or any other epidemic of contagious disease, in a school district, the board may not, under its general powers, temporarily close the schools, or temporarily say who shall be excluded from the schools until the epidemic has passed; but what I do say is that the legislature has not undertaken to give them the power, when no epidemic of contagious disease exists or is imminent in the district, to pass a general, continuing rule which would have the effect of a general law excluding all pupils who will not submit to vaccination.    I think the learned judge was right in saying the school board exceeded its power.

The order of the circuit court is affirmed.

MONTGOMERY, C. J., and HOOKER, J., concurred with MOORE, J.