PEOPLE, *ex rel.* HILL, *v.* BOARD OF EDUCATION OF THE
CITY OF LANSING.

1. HEALTH—POLICE POWER OF STATE TO PREVENT SPREAD OF SMALL-
POX.

   The State, in the exercise of its police powers and in the
   interest of the public health, has the power to enact such
   laws, rules, and regulations as will prevent the spread of
   smallpox.

2. SAME—LOCAL BOARD OF HEALTH MAY REQUIRE EXCLUSION OF
UNVACCINATED CHILDREN, ETC., FROM PUBLIC SCHOOLS.

   Under section 288 of the charter of the city of Lansing,
   giving its board of health the power conferred on health
   boards by the general laws of the State, and 1 Comp.
   Laws 1915, § 5091, conferring broad powers on local boards
   of health to deal with smallpox, the board of health of
   the city of Lansing has the power, when smallpox is found
   to exist in said city, to require the exclusion from the
   public schools of school children, teachers and janitors
   who have not been vaccinated, although the statute does
   not in express terms authorize the requirement of vac-
   cination.

3. SAME—MANDAMUS WILL LIE TO COMPEL EXCLUSION OF UN-
VACCINATED CHILDREN, ETC., FROM PUBLIC SCHOOLS.

   Mandamus will lie to compel a city board of education to
   enforce a regulation of the local board of health requir-
   ing the exclusion from the public schools, during the prev-
   alence of smallpox in the city, of school children, teachers,
   and janitors who have not been vaccinated.

   BIRD, MOORE, and SHARPE, JJ., dissenting.

Certiorari to Ingham; Carr (Leland W.), J.   Sub-
mitted May 8, 1923.   (Calendar No. 30,769.)   Decided
October 1, 1923.

Mandamus by the people of the State of Michigan,
on the relation of S. Rowland Hill, health officer of the

On vaccination as condition of school attendance, see notes in
25 L. R. A. 152; 17 L. R. A. (N. S.) 710; 8 A. L. R. 841.

city of Lansing, to compel the board of education of the city of Lansing and another to enforce an order of the board of health.   From an order granting the writ, defendants bring certiorari.   Affirmed.

*Brown & Kelley* and *S. H. Person,* for appellants.

*John McClellan,* City Attorney, and *Barnard Pierce,* Prosecuting Attorney (*A. M. Cummins,* of counsel), for appellee.

FELLOWS, J.   In the case of *Mathews* v. *Kalamazoo Board of Education,* 127 Mich. 530 (54 L. R. A. 736), this court held that, where there was no case of smallpox in the district, it was beyond the power of the board to require vaccination of pupils as a condition of admission to the schools, but it was there said in the prevailing opinion written by Justice MOORE:

"If the rule was that, during the prevalence of the smallpox in Kalamazoo, the child could not attend school unless vaccinated, a very different result would be reached.   *   *   *   In what I have said I do not mean to intimate that during the prevalence of diphtheria or smallpox, or any other epidemic of contagious disease, in a school district, the board may not, under its general powers, temporarily close the schools until the epidemic has passed; but what I do say is that the legislature has not undertaken to give them the power, when no epidemic of contagious disease exists or is imminent in the district, to pass a general, continuing rule which would have the effect of a general law excluding all pupils who will not submit to vaccination."

The instant case was foreshadowed in that opinion. During the winter of 1922-23 smallpox existed in the city of Lansing.   The board of health and the board of education for a time worked in harmony.   On January 8th, the board of health after consulting with the

secretary of the State board of health, the president of the board of education, and others, passed a resolution directing that steps be taken to prevent the spread of the disease, these steps including quarantine and free vaccination. On January 25th it adopted a further resolution requiring the exclusion from the public schools of school children, teachers and janitors who had not been vaccinated. Notwithstanding the former harmonious relations between the two boards, on January 30th the board of education passed a resolution reciting that there were but 17 cases of smallpox then existing in the city and directing the admission of children to the schools who had not been vaccinated. This proceeding in mandamus was then instituted in the circuit court for the county of Ingham to require the enforcement of the regulations of the board of health. The writ issued and the proceeding is here reviewed by certiorari.

We are plowing no virgin field in considering the questions here involved. Numerous decisions, both Federal and State, have considered the questions now before us. They are not all in accord and in some instances are not reconcilable. There is, however, a very marked trend in them in one direction, that which upholds the right of the State in the exercise of its police power and in the interest of the public health to enact such laws, such rules and regulations, as will prevent the spread of this dread disease. The power of the State to require vaccination in case the disease was present in a community was upheld in *Jacobson* v. *Massachusetts*, 197 U. S. 11 (25 Sup. Ct. 358, 3 Ann. Cas. 765), where it was said by Justice Harlan, speaking for the court:

"But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed

from restraint.    There are manifold restraints to which every person is necessarily subject for the common good.    On any other basis organized society could not exist with safety to its members.    Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others.    *    *    *

"Applying these principles to the present case, it is to be observed that the legislature of Massachusetts required the inhabitants of a city or town to be vaccinated only when, in the opinion of the board of health, that was necessary for the public health or the public safety.    The authority to determine for all what ought to be done in such an emergency must have been lodged somewhere or in some body; and surely it was appropriate for the legislature to refer that question, in the first instance, to a board of health, composed of persons residing in the locality affected and appointed, presumably, because of their fitness to determine such questions.    To invest such a body with authority over such matters was not an unusual nor an unreasonable or arbitrary requirement.    Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members.    It is to be observed that when the regulation in question was adopted, smallpox, according to the recitals in the regulation adopted by the board of health, was prevalent to some extent in the city of Cambridge and the disease was increasing.    If such was the situation—and nothing is asserted or appears in the record to the contrary—if we are to attach any value whatever to the knowledge which, it is safe to affirm, is common to all civilized peoples touching smallpox and the methods most usually employed to eradicate that disease, it cannot be adjudged that the present regulation of the board of health was not necessary in order to protect the public health and secure the public safety.    Smallpox being prevalent and increasing at Cambridge, the court

would usurp the functions of another branch of government if it adjudged, as matter of law, that the mode adopted under the sanction of the State, to protect the people at large, was arbitrary and not justified by the necessities of the case."

In the case of *State* v. *Hay*, 126 N. C. 999 (35 S. E. 459, 49 L. R. A. 588, 78 Am. St. Rep. 691), it was said:

"* * * It is every day common sense that if a people can draft or conscript its citizens to defend its borders from invasion, it can protect itself from the deadly pestilence that walketh by noon-day, by such measures as medical science has found most efficacious for that purpose.    We know, as an historical fact, that prior to the discovery, 101 years ago, of vaccination, by Edward Jenner, smallpox often destroyed a third or more of the population of a country which it attacked, and so futile was every precaution, and the most careful seclusion, that the greatest sovereigns fell victims to this loathsome disease, which Macaulay has styled 'the most terrible of all ministers of death.' If this was so in days of imperfect communication, the present rapid means of intercourse between most distant points would so spread the disease as to quickly paralyze commerce, and all public business, if government could not at once stamp it out by compelling all alike, for the public good as much as for their own, to submit to vaccination.  *   *   *

"But even if we were of opinion with the small number of medical men who contend that vaccination is dangerous to health, and not a preventive of the disease, the court is not a paternal despotism, gifted with infallible wisdom, whose function is to correct the errors and mistakes of the legislature."

In the *Matter of Viemeister*, 179 N. Y. 235 (72 N. E. 97, 70 L. R. A. 796, 1 Ann. Cas. 334, 103 Am. St. Rep. 859), the court held as it has been held in other States that the courts would take judicial notice of the fact that the common belief of the people is that vaccination is a preventive of smallpox and it was there said:

"The right to attend the public schools of the State is necessarily subject to some restrictions and limitations in the interest of the public health.   A child afflicted with leprosy, smallpox, scarlet fever or any other disease which is both dangerous and contagious, may be lawfully excluded from attendance so long as the danger of contagion continues.   Public health as well as the interest of the school requires this, as otherwise the school might be broken up and a pestilence spread abroad in the community.   So a child recently exposed to such a disease may be denied the privilege of our schools until all danger shall have passed. Smallpox is known of all to be a dangerous and contagious disease.   If vaccination strongly tends to prevent the transmission or spread of this disease, it logically follows that children may be refused admission to the public schools until they have been vaccinated."

In *Morris* v. *City of Columbus*, 102 Ga. 792 (30 S. E. 850, 42 L. R. A. 175, 66 Am. St. Rep. 243), the court sustained the validity of a vaccination ordinance of the city enacted under delegated authority, and it was said:

"The ordinance is aimed only at those who have not been vaccinated within a certain time, who are not immune, or who have not furnished a certificate from some physician that the injection of the virus into their system would be injurious.   It is even more liberal than that; it allows to every person the privilege of being inoculated by the physician of his choice. There can be no question that this is a reasonable exercise of the power conferred upon the city authorities by the legislature.   With the wisdom or policy of vaccination the courts have nothing to do.   We do not propose to enter into a discussion as to whether or not it is a preventive of smallpox.   That question is not proper subject-matter for review by the courts. The legislature has seen fit to adopt the opinion of those scientists who insist that it is efficacious, and this is conclusive upon us.   *   *   *   No law which infringes any of the natural rights of man can long be enforced.   Under our system of government the

remedy of the people, in that class of cases where the courts are not authorized to interfere, is in the ballot-box.    Any law which violates reason, and is contrary to the popular conception of right and justice will not remain in operation for any length of time, but courts have no authority to declare it void merely because it does not measure up to their ideas of abstract justice.    The motive which doubtless actuated the legislature in the passage of the act now under consideration was that vaccination was for the public good.    In this the general assembly is sustained by the opinion of a great majority of the men of medical science both in this country and in Europe."

See, also, *Bissell* v. *Davison*, 65 Conn. 183 (32 Atl. 348, 29 L. R. A. 251) ; *State* v. *Board of Education*, 76 Ohio St. 297 (81 N. E. 568, 10 Ann. Cas. 879) ; *Commonwealth* v. *Pear*, 183 Mass. 242 (66 N. E. 719, 67 L. R. A. 935) ; *Abeel* v. *Clark*, 84 Cal. 226 (24 Pac. 383) ; *In re Walters,* 84 Hun (N. Y.), 457; *People* v. *Ekerold*, 211 N. Y. 386 (105 N. E. 670) ; *Hutchins* v. *Durham*, 137 N. C. 68 (49 S. E. 46, 2 Ann. Cas. 340) ; *State, ex rel. Cox*, v. *Board of Education*, 21 Utah, 401 (60 Pac. 1013).

It is further urged on behalf of defendants that assuming the State has power to require vaccination of children as a condition of admission to the public schools, such power can only be exercised by the legislature, and that it can not be, and has not been, delegated to the local health boards.    We shall not quote all the provisions of our legislation having reference to the powers of the health boards.    The details, what shall be done as different situations arise, must, of necessity, be left to some administrative body. Section 5081, 1 Comp. Laws 1915, provides:

"When the smallpox or any other disease dangerous to the public health, is found to exist in any township, the board of health shall use all possible care to prevent the spreading of the infection, and to give public notice of infected places to travelers, by such means

as in their judgment shall be most effectual for the common safety."

See, also, section 5091, 1 Comp. Laws 1915.   Under section 288 of the charter of the city of Lansing its board of health is given the power conferred on health boards by the general laws of the State.   By the statute above quoted very broad powers to deal with this dread disease are conferred.   Since the early case of *Hazen* v. *Strong*, 2 Vt. 427, decided in 1830, the general tendency of the courts has been to give to statutes dealing with the public health a liberal construction.   In that case the power had been delegated to the selectmen to take "the most prudent measures" to prevent the spread of the disease.   It was there said:

"When the legislature made it the duty of the selectmen in each town, in which there should be any person infected with the smallpox, to take the most prudent measures to prevent the spreading of the disease, they may not have thought of the particular measure of inoculating for the kine pox.   They may not have known that to be a prudent or efficacious measure. But whenever it is found to be evidently such the provisions of the statute are broad enough to include it.   These prudent measures to prevent the spread of the disease, are to be taken at the expense of the town, and not of individuals.   There may be trouble and expense to individuals, but the selectmen cannot compel them to pay any expense of their proceedings.   These must be paid by the town.   Now, experience fully evinces the eminent utility of the kine pox in saving expense, as well as placing a safeguard around each individual, to protect life and health, while all attend to their usual vocations, instead of being confined with a loathsome disease, or becoming nurses to those who are thus confined.   We are, therefore, disposed to support the selectmen, and the town, in this measure to prevent the spreading of the disease, when circumstances render any measures necessary."

In the case of *State, ex rel. Freeman*, v. *Zimmer*

*man,* 86 Minn. 353 (90 N. W. 783, 58 L. R. A. 78, 91 Am. St. Rep. 351), the same questions were before the court as we have under consideration in the instant case. It was there said:

"In view of the importance of the interests confided to the care of health officers, the various statutes conferring such powers should, notwithstanding the individual liberty of the citizens is in a large measure involved, receive a broad and liberal construction in aid of the beneficial purposes of their enactment. * * *

"It will be noted that none of the provisions of the statute just quoted expressly authorizes municipal authorities or health officers to require children to be vaccinated, as a condition precedent to their admission to the public schools; yet we have no hesitation in holding (giving the several provisions referred to a broad and liberal construction) that the legislature intended to confer such power upon them. A broad and comprehensive delegation of power to do all acts and make all regulations for the preservation of the public health as are deemed expedient confers, by fair implication, at least, the power sought to be exercised in this case."

In *Blue* v. *Beach,* 155 Ind. 121 (56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195), the supreme court of that State also had before it the questions here involved. The power had been delegated in general terms. In an exhaustive and able opinion written by Justice Jordan, the authorities are fully considered and the right to exclude children who had not been vaccinated from the public schools was upheld. We quote somewhat at length from this case:

"It can not be successfully asserted that the power of boards of health to adopt rules and by-laws subject to the provisions of the law by which they are created, and in harmony with other statutes in relation to the public health, in order that the 'outbreak and spread of contagious and infectious diseases' may be prevented, is an improper delegation of legislative author-

ity, and a violation of article 4, § 1, of the constitution. It is true beyond controversy that the legislative department of the State, wherein the constitution has lodged all legislative authority, will not be permitted to relieve itself of this power by the delegation thereof. It can not confer on any body or person the power to determine what the law shall be, as that power is one which only the legislature, under our constitution, is authorized to exercise; but this constitutional inhibition can not properly be extended so as to prevent the grant of legislative authority, to some administrative board or other tribunal, to adopt rules, by-laws, or ordinances for the government of or to carry out a particular purpose. It can not be said that every grant of power to executive or administrative boards or officials, involving the exercise of discretion and judgment, must be considered as a delegation of legislative authority. While it is necessary that a law, when it comes from the lawmaking power, shall be complete, still there are many matters relating to methods or details which may be, by the legislature, referred to some designated ministerial officer or body. All of such matters fall within the domain of the right of the legislature to authorize an administrative board or body to adopt ordinances, rules, by-laws, or regulations in aid of the successful execution of some general statutory provision. * * * This being true, and an emergency on account of danger from smallpox having arisen, and the board believing, as we may assume, that the disease would spread through the public schools, and further believing that it could be prevented, or its bad effects lessened, by the means of vaccination, and thereby afford protection to the pupils of such schools and the community in general, it would certainly have the right, under the authority with which it was invested by the State, to require, during the continuance of such danger, that no unvaccinated child be allowed to attend the public school; or the board might, under the circumstances, in its discretion, direct that the schools be temporarily closed during such emergency, regardless of whether or not the pupils thereof refused to be vaccinated.

"If vaccination was the most effective means of preventing the spread of the disease through the public schools, and this the local board seems to have deter-

mined, it then became not only the right but the duty of the board to require that the pupils of such schools be vaccinated as a sanitary condition imposed upon their privilege of attending the schools during the period of the threatened epidemic of smallpox."

Upon the question of the exercise of delegated authority, see, also, *In the Matter of Rebenack*, 62 Mo. App. 8; *State, ex rel. O'Bannon*, v. *Cole*, 220 Mo. 697 (119 S. W. 424, 22 L. R. A. [N. S.] 986); *State, ex rel. Cox*, v. *Board of Education*, *supra*.

The last speaking of the court of last resort of the Nation is *Zucht* v. *King*, 260 U. S. 174 (43 Sup. Ct. 24), handed down November 13, 1922. This was a case involving delegated power. It was there said:

"Long before this suit was instituted, *Jacobson* v. *Massachusetts*, 197 U. S. 11 (25 Sup. Ct. 358, 3 Ann. Cas. 765), had settled that it is within the police power of a State to provide for compulsory vaccination. That case and others had also settled that a State may, consistently with the Federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative. *Laurel Hill Cemetery* v. *San Francisco*, 216 U. S. 358 (30 Sup. Ct. 301). And still others had settled that the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law. *New York, ex rel. Lieberman*, v. *Van De Carr*, 199 U. S. 552 (26 Sup. Ct. 144). A long line of decisions by this court had also settled that, in the exercise of the police power, reasonable classifications may be freely applied and that regulation is not violative of the equal protection clause merely because it is not all-embracing. *Adams* v. *Milwaukee*, 228 U. S. 572 (33 Sup. Ct. 610); *Miller* v. *Wilson*, 236 U. S. 373, 384 (35 Sup. Ct. 342, L. R. A. 1915F, 829). In view of these decisions we find in the record no question as to the validity of the ordinance sufficiently substantial to support the writ of error. Unlike *Yick Wo* v. *Hopkins*, 118 U. S. 356 (6 Sup. Ct. 1064), these ordinances confer not arbitrary power, but only

that broad discretion required for the protection of the public health."

In 12 R. C. L. p. 1289, it is said:

"Generally express power to require the vaccination of school children is not necessary, but may be implied from discretionary power to take all proper measures to safeguard the public health."

In the case of *Highland* v. *Schulte*, 123 Mich. 360, this court had before it the delegation of power to the Detroit board of health in most general terms. Acting under it the board of health made a rule that where smallpox developed in one apartment of a double house the whole house should be quarantined. The power of the board to make and enforce such a rule was upheld.

The language of the section quoted confers on the board of health broad powers; it permits the board to work out the details necessary to prevent the spread of the disease. There must be some elasticity in order to effectually meet varying conditions and the legislature has seen fit to fix the ultimate purpose of the regulations to be the "common safety" and to leave the details necessary to work out that purpose to an administrative board. We can not say upon this record that the members of that board have chosen the wrong means or that they lack the power in the exercise of their honest judgments to make the regulation here considered.

The courts are always open to review the arbitrary action, the abuse of discretion of an administrative body. But we would not be justified in holding in the instant case that the action of the health board was arbitrary or that it had abused its discretion. While the number of cases of smallpox in Lansing seems to be in dispute, if we accept defendants' figures the disease is present in the city and there are several

cases of it.    From an examination of the case of *State, ex rel. Cox,* v. *Board of Education, supra,* it will be noted that at the time of the hearing there were 200 cases of smallpox in the city of Salt Lake City, all of which were directly traceable to one case.    In *Duffield* v. *School District,* 162 Pa. 476 (29 Atl. 742, 25 L. R. A. 152), the school board had refused admission to children who had not been vaccinated.    The action of the board was upheld by the court, and it was said:

"It is not an error in judgment, or a mistake upon some abstruse question of medical science, but an abuse of discretionary power, that justifies the courts in interfering with the conduct of the school board or setting aside its action."

And in *Auten* v. *School Board of Little Rock,* 83 Ark. 431 (104 S. W. 130), it was said:

"It was the duty of the city council and of the board of health of the city, as far as possible, to protect the inhabitants of the city from malignant, contagious and infectious diseases, and the special duty of the school board to guard the pupils of the school against such dangers.    When we consider that a number of cases of smallpox were already in the city, and that strict precautions were necessary to prevent the spread of the disease, we do not think there can be any ground for the contention that this requirement that pupils should be vaccinated before entering the schools was unreasonable and unnecessary."

When we consider that one child may innocently communicate the disease to all its playmates in school and realize how quickly the scourge spreads unless restrained, it becomes evident that courts ought not to stay the hands of an administrative board seeking to protect the public health unless clearly convinced that the board is acting arbitrarily and in abuse of discretion.    Courts ought not to under such circumstances with pencil and paper figure out percentages

and probabilities and say to such board we will substitute our judgment for yours and unless a certain percentage of the population is stricken, you may not act.

Finally it is insisted that mandamus may not be resorted to. This contention is answered by the case of *State, ex rel. Horne,* v. *Beil,* 157 Ind. 25 (60 N. E. 672), in which case mandamus was issued on application of the board of health to compel the school trustees to enforce a regulation similar to the one here involved. We think the board of health is to be commended instead of condemned for applying to the court to enforce its order rather than to attempt its enforcement by "brute force."

The writ was properly issued and the judgment will be affirmed. As the question is a public one no costs will be allowed.

MCDONALD, CLARK, and STEERE, JJ., concurred with FELLOWS, J.

WIEST, C. J. (*concurring*). Without subscribing to all of the general observations relative to powers vested in boards of health, but confining consideration thereof to the very instance before us, I concur in the result reached by Mr. Justice FELLOWS.

MOORE, J. (*dissenting*). On January 25, 1923, the board of health of the city of Lansing passed the following resolution:

"That all school children, teachers and janitors not already vaccinated be excluded from the public schools of Lansing until such time as in the opinion of the board of health the danger from further spread of smallpox has passed."

On January 30, 1923, the board of education of the city of Lansing adopted the following resolution:

"Whereas, the work of the schools of the city of Lansing has been seriously interrupted during the past month, and

"Whereas, large numbers of children have been vaccinated, and

"Whereas, there is no epidemic of smallpox in this city, there being only 17 cases at present;

"Therefore be it resolved by the board of education of the city of Lansing that all principals of schools in the city be instructed to admit any child to school who has not had smallpox recently, or who has not been living in a family having smallpox, or who is not quarantined and who in his or her judgment is in good health and has not been exposed to smallpox.

"This resolution is passed in the interests of the schools and for the purpose of enforcing proper school law and having in school all children who ought legally to be in attendance."

The return of the school board shows there had been no case of smallpox in 19 of the 22 public schools of the city. The answer also contains the following statement:

"And further answering, said respondents say that the city of Lansing is a city with a population of approximately seventy thousand persons and that there were and are approximately eleven thousand children of school age in attendance in the public schools within said city; and respondents deny that in view of the population of said city and the number of children of school age therein, that the number of cases of smallpox as alleged in said petition as having existed or existing within said city, has created an epidemic of smallpox therein and say that no epidemic of smallpox has existed or does exist which warrants or authorizes the order of the board of health referred to in said petition undertaking to generally exclude from attendance in the public schools of children who have not been vaccinated for smallpox."

The answer further states that there are approximately 1,500 unvaccinated children of school age in the city of Lansing. It may or may not be of interest

that the president of the school board, which makes the return, is one of the leading physicians in Lansing. The answer of the school board was verified and no plea thereto was made so that it may be said the answer should be taken as true (3 Comp. Laws 1915, § 13440).

It may be pertinent at the outset to inquire what is an epidemic as related to disease.    Webster's Dictionary says it is "a disease, which spreading widely, attacks many persons at the same time." Could 17 cases of smallpox, duly quarantined, in a city of 70,000 people, be said to be within the definition of an epidemic?

The legislature has spoken upon the subject of smallpox and what should be done when it appears.    Commencing with section 5075, 1 Comp. Laws 1915, nearly three pages are devoted to the subject of what shall be done when the disease appears.    Provision is made for removal to hospitals, for isolation, for quarantine. Section 5091, 1 Comp. Laws 1915, tells what shall be the duty of the health officer.    Nowhere is it suggested in any of these provisions that all school children must be vaccinated and that if they are not they may be excluded from the public schools though they are in good health and have not been exposed to the smallpox.

Justice FELLOWS is quite right in saying of the decisions of the courts that they are not all in accord and in some instances are not reconcilable.    I think he is wrong in concluding that the case of *Mathews* v. *Kalamazoo Board of Education*, 127 Mich. 530 (54 L. R. A. 736), foreshadowed the result reached in his opinion.    So far as that opinion is applicable to the instant case we think it justifies the action of the school board in declining to exclude unvaccinated children from the public schools.    The prevailing opinion in that case undertook to show, and we think

did show, that the parent was under obligation to send his child of school age to the public school and that the practical effect of the action of the school board in that case would be to compel vaccination. In the instant case if the resolution of the board of health is to control then the child must be debarred from attending school unless vaccinated, even though the parent may have religious scruples against vaccination, and though a very large number of people of excellent judgment object to the introduction of vaccine virus into the bodies of healthy children, and though the school board, which is undoubtedly in touch with local conditions, is of the opinion there was no occasion for the order of the board of health and, if we may take judicial cognizance of the conditions in Lansing, the sequel has shown that the board of education was right and the board of health was unnecessarily disturbed.

The case of *Duffield* v. *School District*, 162 Pa. 476 (29 Atl. 476, 25 L. R. A. 152), cited in the opinion of Justice FELLOWS, was quoted from at length in the minority opinion in *Mathews* v. *Board of Education*, *supra*, but this court declined to follow it and the line of cases of which it is a type. On the contrary the court quoted with approval from *Potts* v. *Breen*, 167 Ill. 67 (47 N. E. 81, 39 L. R. A. 152, 59 Am. St. Rep. 262), and from *State, ex rel. Adams,* v. *Burdge*, 95 Wis. 390 (70 N. W. 347, 37 L. R. A. 157, 60 Am. St. Rep. 123). To these cases should be added the case of the *People, ex rel. Jenkins,* v. *Board of Education*, 234 Ill. 422 (84 N. E. 1046, 17 L. R. A. [N. S.] 709. 14 Ann. Cas. 943).

As has already appeared the legislature has spoken as to what may be done in cases of smallpox. If it should decide that in addition to the power now conferred upon boards of health they should also have the power to exclude all unvaccinated children from the

public schools it will undoubtedly say so.   Until that is done the board of public health may not act as it has attempted to do here.   See *Rock* v. *Carney,* 216 Mich. 280 (22 A. L. R. 1178).

We think the writ was improperly issued and should be dismissed.   The case is one of public interest and no costs should follow.

BIRD and SHARPE, JJ., concurred with MOORE, J.